**Gordon B. McLENDON, Jr.**

v.

**Mary Elizabeth B. McLENDON.**

No. 05–91–01698–CV.

Court of Appeals of Texas, Dallas.

Dec. 15, 1992.

Rehearing Denied Jan. 22, 1993.

Charles H. Robertson, Cynthia Hollinsworth, Dallas, for appellant.

Richard R. Orsinger, Dallas, for appellee.

Before STEWART, KINKEADE and KAPLAN [1], JJ.

## OPINION

STEWART, Justice.

Appellant Gordon B. McLendon, Jr. (Bart), appeals from the trial court's entry of a final decree of divorce. The trial court's written decree was allegedly based on the parties' oral settlement agreement dictated on the record in open court. Bart's sixteen points of error generally complain that the trial court erred in sign-

---

**1.** The Honorable Jeff Kaplan participated in this cause at the time it was submitted for decision. Due to Justice Kaplan's leaving office on November 20, 1992, he did not participate in the issuance of this opinion.

ing the judgment because (1) there was no complete agreement upon which the court could render a consent judgment; (2) there was no or insufficient evidence on which the court could otherwise render judgment; (3) Rule 11 of the Texas Rules of Civil Procedure does not override the statutory requirements of agreements in writing found in the Texas Family Code and section 26.01 of the Texas Business and Commerce Code; and (4) the court's written decree contains additional terms different from those presented orally in open court. We modify the judgment and, as modified, affirm.

## STATEMENT OF FACTS

Mary Elizabeth B. McLendon (Beth) filed suit for divorce on June 15, 1989. After substantial pretrial activity, including written discovery and numerous depositions, the case was specially set for trial on Monday, February 4, 1991. On January 29, 1991, the parties appeared in court with their respective attorneys and presented their alleged settlement to the trial court. The terms of the agreement were presented to the court through the sworn testimony of both spouses. The agreement was made on the record in open court. The trial court orally granted the divorce, approved the rule 11 stipulations read into the record, and adopted "[them] in haec verba as the Court's rendition of judgment." Both parties filed motions to enter their respective forms of written judgments. In conjunction with his proposed final decree, Bart also filed a memorandum of law. Thereafter, Bart filed a motion to vacate the trial court's judgment and Beth filed an amended proposed written decree. The trial court rejected both versions of Beth's decree and denied Bart's motion to vacate, signing its own version of the final decree of divorce on July 19, 1991. It is this decree from which Bart appeals.

## WAIVER OF POINTS OF ERROR

■ We first address Beth's contention that Bart has waived or is barred from asserting all of his points of error, except points four and sixteen, because each is contrary to the position Bart took in the trial court. Beth asserts that, because Bart had filed a motion to enter final decree of divorce, relying on the rule 11 stipulations and the trial court's oral rendition on January 29, 1991, he is now barred or estopped from urging a contrary position on appeal. She also argues that Bart cannot secure reversal of the judgment because he invited the alleged errors on which he relies. *See Bayoud v. Bayoud,* 797 S.W.2d 304, 312 (Tex.App.—Dallas 1990, writ denied).

Beth relies on Bart's motion to enter final decree of divorce and memorandum of law, stating that the court should sign his proposed decree "as its ministerial act accurately reducing to written judgment the provisions of the judgment of the Court rendered January 29, 1991." She also argues that Bart's sworn testimony in the January hearing that he agreed on the resolution of the disputes as set out in the record constituted a stipulation which is binding on him. She refers us to *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 677 (Tex.1979) (oral agreement made in summary judgment hearing that issues would be narrowed to one legal question precluded a party from arguing a different position on appeal).

The record reveals that, months before the trial court signed its decree, Bart withdrew his motion to enter final decree of divorce without urging any action thereon and that, by separate motion, he twice asked the court to vacate its oral rendition of judgment. After the judgment was signed, Bart filed a motion for new trial again asking the court to vacate its rendition of judgment. We agree with Bart that his motion to enter final decree is not an estoppel or bar against him because he never urged it to the point of obtaining a ruling and because he superseded that motion with a subsequent pleading to vacate the oral rendition. *Browning v. Holloway,* 620 S.W.2d 611, 615 n. 4 (Tex.Civ.App.— Dallas 1981, writ ref'd n.r.e.). We likewise conclude that the doctrine of invited error does not apply because Bart made his objections to the divorce decree known to the trial court. *See Harrison v. ICT Life Ins.*

*Co.,* 319 S.W.2d 372, 374 (Tex.Civ.App.—Fort Worth 1958, writ ref'd n.r.e.).

Moreover, we note that the *Clear Creek* court simply held that agreements meeting the requirements of rule 11 are binding on the parties and that rule 11 was satisfied in that case because the oral waiver or agreement made in open court was described in the judgment of the court. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d at 677. Further, Bart is not repudiating in this appeal his sworn testimony in the January hearing that he agreed on the resolution of the disputes as set out in the record. He is not attacking the stipulations that were made; his contention is that those stipulations are insufficient to support a judgment because material terms were left to future negotiation. For all of the foregoing reasons, we hold that Bart has not waived and is not barred from asserting any of his points of error.

## EXISTENCE OF COMPLETE AGREEMENT

■ Bart's first three points and his fifth point are based on his contention that the rule 11 stipulations dictated in open court on January 29, 1991, did not constitute a complete agreement. Thus, he contends that the trial court erred (1) in orally rendering judgment based on these stipulations; (2) in finding that the parties had entered into a valid rule 11 agreement concerning the division of property and liabilities, the maintenance of his wife, and the terms and conditions of conservatorship of their minor children; and (3) in finding that it rendered a noninterlocutory judgment on January 29, 1991. Thus, these points are based on the central issue in this appeal, that is, whether the parties reached a "complete agreement" that would support the trial court's oral rendition of judgment at the end of the January hearing.

Bart argues that the parties did not reach a complete agreement because the rule 11 stipulations lacked the finality essential to every agreement. He maintains that the reference by Beth's attorney to the dictation of the "general parameters and

terms" shows that the recitations in the record were expressly intended to constitute the general parameters of an agreement, not the parties' complete and final recitation of their agreement. He further contends that, since the trial court allegedly was unable to prepare its decree without supplying additional terms not agreed to by the parties, there was no meeting of the minds on all material terms.[2] Beth responds that the parties had come to a complete agreement, which was established by sworn testimony. The parties testified under oath that the dictated agreement was their agreement and asked the trial court to render judgment on that agreement.

Regarding the division of property and liabilities, Bart relies on *Rogers v. Rogers,* 806 S.W.2d 886, 888 (Tex.App.—Corpus Christi 1991, no writ). There, the court of appeals concluded that the trial court had no power to render an agreed judgment at the time the settlement was presented to the court, because all of the material terms of settlement were not agreed. *Id.* The record in *Rogers* reveals that the husband agreed to pay the wife $3500 per month for twenty years but that the payments were to be secured to the reasonable satisfaction of the wife's attorney. *Id.* The wife's attorney replied that, "Other than that (security for the payments), . . . that is basically our agreement. The main contingency and the main thing [the husband's attorney] and I are going to have to work on is to see that we can, in fact, secure those payments satisfactorily." The court concluded that this record established that security for these payments was left open to negotiation; that the payments comprised the principal benefit provided to the wife under the agreement; and that, due to the extended time frame and risk involved, full collateralization of the payments was understandably crucial. *Id.* Based on these facts, the court concluded that the question of collateral was a *material* term of the agreement to which the parties had not agreed, and, therefore, no final and enforceable agreement was entered of record on the date that the parties presented their

---

**2.** We address this last argument in our consideration of point of error four below.

attempted settlement to the court. *Id.* We agree with this decision, but we conclude it is distinguishable on its facts.

Here, Bart asserts that the "agreement" evidenced by the January 29, 1991 statement of facts is as indefinite as the *Rogers* prove-up because the record recitations were expressly intended by the parties to constitute the general parameters of an agreement, and because they also agreed to prepare a security agreement that would be subject to the approval of Bart's counsel. We disagree. First, we conclude that the reference to "general parameters and terms" by the wife's attorney did not establish that the parties qualified their stipulations as only the "general parameters and terms" of an agreement which, as Bart argues, would be subject to later reduction to a future written agreement setting out specific terms to be approved by Bart's attorney and signed by Bart. Taken in context, this reference was in a question to Bart by Beth's attorney as follows:

> Q. And when we have dictated the general parameters and terms, although we are asking that the Court enter its judgment and render here judgment today, you understand that each of you will be required to execute documents in order to effectuate the purposes of this agreement, do you not?
>
> A. I do.
>
> Q. And that you agree to execute all documents which your counsel believes to be reasonable and necessary to accomplish the purposes of this settlement agreement, and to reduce it all to proper form; is that correct?
>
> A. I do.

We conclude that the thrust of these questions was to be sure that Bart understood that he was obligated to execute documents to *implement* the agreement being submitted to the court. There is no indication in the record that the parties contemplated that their agreement would not be binding until it was reduced to writing. To the contrary, there were repeated references to the parties' seeking an oral rendition of judgment at the January 29th hearing. Further, the statement of facts of this hearing reveals that the parties agreed to detailed provisions for the division of property and for the obligations of each of the parties under that division. Particularly, we note that specific collateral was designated as security for secured obligations.

■ Nevertheless, Bart argues that, as in *Rogers*, material terms were left open to negotiation in the future regarding the use of his partnership interests as security for his cash obligations to Beth, because their stipulations did not address "essential details and specific terms for securing payments" with his partnership interests. We disagree. In fact, the parties agreed to many specific terms to be included in the security instruments. We conclude that specific provisions to be contained in the underlying documents are terms that are necessary to effectuate or implement the parties' agreement that Bart's partnership interests were to be security for long-term payments to Beth. Such terms do not affect the agreed substantive division of the property; consequently, they may be left to future articulation between the parties or to future consideration by the trial court under sections 3.70, 3.71, or 3.72 of the Family Code. TEX.FAM.CODE ANN. §§ 3.70, 3.71, 3.72 (Vernon Supp.1992). Further, as indicated above, the parties agreed to execute such documents as necessary as part of their overall agreement.

■ Bart's argument is based on the premise that the parties must agree to *all* terms of a settlement agreement before the court can render an agreed judgment. The law does not require the parties to dictate and agree to all of the provisions to be contained in all of the documents necessary to effectuate the purposes of the agreement; it only requires the parties to reach an agreement as to all material terms of the agreement and prevents the trial court from supplying additional terms to which the parties have not agreed. *Rogers*, 806 S.W.2d at 888. Bart relies on Beth's proposed Agreement Incident to Divorce to show the myriad issues left unresolved despite the parties' statements at the January hearing. However, the attempts by the parties to reduce the rule 11 stipulations to

writing do not affect the nature and effect of the stipulations dictated at the January hearing. We hold that the parties reached a complete agreement on which final judgment could be rendered as to division of property and liabilities, the maintenance of the wife, the terms and conditions of conservatorship and support of the minor children, and attorney fees and costs. Hence, the trial court did not err in orally rendering judgment on January 29, 1991, based on the rule 11 stipulations. We overrule Bart's first, second, third, and fifth points of error.

## SUFFICIENCY OF THE EVIDENCE

In points six through nine, Bart asserts that, if the decree is not a valid consent judgment, the court could only render judgment based on legally or factually sufficient evidence. Bart contends that there was neither legally nor factually sufficient evidence by which the court could have made the findings it did in support of the decree. Specifically, Bart argues that (1) there was no evidence to support the trial court's findings that he waived a jury trial and submitted all matters to the court for determination; (2) there was no or insufficient evidence to support the finding that the division of the estate was just and right, having due regard for the rights of each party and their children and for the benefits Beth may have derived from continuation of the marriage, the parties' disparity in earning power, their education and future employability, and their relative physical conditions; and (3) there was no or insufficient evidence on which the trial court could have made its division of the estate. Bart acknowledges that there was no trial in this case, but he states that he alleges these points so he will not be bound by unchallenged findings that Beth might argue would support the judgment in the absence of a complete agreement. In view of our holding that the parties did reach a complete agreement that supports the oral rendition of judgment, we do not reach these points.

## FAMILY CODE REQUIREMENTS OF AGREEMENT IN WRITING

■ Bart contends that compliance with the "open court and entered of record" portion of rule 11 does not satisfy any of the Family Code requirements of written agreements. Texas Rule of Civil Procedure 11 states, "No agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R.CIV.P. 11.

In his tenth and thirteenth points of error, Bart alleges the Family Code requires a written agreement for agreements incident to divorce, including provisions for property division, conservatorship, and support of minor children. TEX.FAM.CODE ANN. §§ 3.631, 14.06, 14.021 (Vernon Supp.1992). He insists that rule 11 does not supersede the Family Code's requirement of a writing. He argues that courts have repeatedly enforced the requirements of the Code that agreements be in writing when presented with the issue by parties who had attempted to orally agree. He cites, for example, *Collins v. Collins*, 752 S.W.2d 636, 637 (Tex.App.—Fort Worth 1988, writ ref'd) (written memorandum of oral agreement is not a partition agreement in writing as required by Family Code); *Kartchner v. Kartchner*, 721 S.W.2d 482, 483 (Tex.App.—Corpus Christi 1986, no writ) (same); *Miller v. Miller*, 700 S.W.2d 941, 951 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (partition agreement must be in writing); *Recio v. Recio*, 666 S.W.2d 645, 649 (Tex.App.—Corpus Christi 1984, no writ) (partition or exchange agreements must be in writing to be enforceable).

Beth responds that none of Bart's authorities hold that an agreement dictated in open court to the court reporter will not suffice to constitute compliance with sections 3.631, 14.06, and 14.021 of the Family Code. She notes that none of the cases cited above relate to the in-court settlement of a divorce. Rather, the cases cited by Bart involve the enforceability of out-of-court separation agreements and partition

agreements. Beth relies on *Milwee v. Milwee*, 757 S.W.2d 429, 431 (Tex.App.—Dallas 1988, no writ), where this Court upheld a divorce decree based on an oral agreement dictated to the court reporter in open court. *Accord: Dehnert v. Dehnert*, 705 S.W.2d 849, 850 (Tex.App.—Beaumont 1986, no writ); *Cluck v. Cluck*, 699 S.W.2d 246, 248–49 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

Bart asserts that the issue of whether compliance with the "open court and entered of record" portion of rule 11 satisfies the statutory requirement of a written agreement was not raised in any of Beth's authority. He contends that no Texas court has addressed this issue in a manner that would be precedent for this Court. He insists that courts cannot apply rule 11 in a manner that alters the requirements of the Family Code, absent an express provision in the Code to the contrary, because the supreme court's rulemaking power "may not abridge, enlarge, or modify the substantive rights of a litigant." TEX.GOV'T CODE ANN. § 22.004(a) (Vernon 1988). Thus, where a rule of procedure conflicts with a statutory enactment, the statute prevails. *See Few v. Charter Oak Fire Ins. Co.*, 463 S.W.2d 424, 425 (Tex.1971). He argues that rule 11 merely sets the minimum standards for the enforcement of agreements, *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex.1984), and that it does not waive the requirement of written agreement found in sections 3.631, 14.06, and 14.021 of the Family Code.

The purpose of rule 11 is clear. Oral agreements concerning suits are apt to be misconstrued or forgotten and themselves to create misunderstandings and controversies. *Id.* at 529. Agreements and stipulations are welcomed by courts because they limit the matters in controversy and expedite trial proceedings. *Id.* at 530. Rule 11 ensures that such agreements do not themselves become sources of controversy, impeding resolution of suits. *Id.* Further, today we have burgeoning litigation and crowded dockets, making amicable settlement of lawsuits greatly to be desired. *Id.*

We note that the rule itself equates a written agreement with the "open court and entered of record" portion of rule 11. Both alternatives attain the purpose of the rule, which is to memorialize the terms of the agreement reached by the litigants. The court reporter's transcription of the dictated agreement results in a written agreement, and the sworn testimony of the parties given to the court reporter in open court memorializes the parties' consent and can also be reduced to writing. We hold that this procedure has the same legal effect as a written agreement signed by the parties and, in fact, results in a written agreement that meets the requirements of sections 3.631, 14.06, and 14.021 of the Family Code. We overrule points ten and thirteen.

Bart's eleventh and twelfth points are premised on his contention that the rule 11 stipulations are an incomplete, oral, and conditional agreement. Thus, he argues that the trial court's decree was erroneous because the court had no authority to order the payment of alimony, the payment of support for children over eighteen who have graduated from high school, or the divestiture and encumbrance of separate property. However, we have held that the rule 11 stipulations constitute a complete agreement and that they satisfy the requirement of an agreement in writing. It is well established that a court may render judgment based upon an agreement of the parties that goes beyond the court's power to adjudicate in the absence of an agreement. *See, e.g., Francis v. Francis*, 412 S.W.2d 29, 33 (Tex.1967) (agreed divorce decree may contain provisions for alimony payments); *Boyett v. Boyett*, 799 S.W.2d 360, 363 (Tex.App.—Houston [14th Dist.] 1990, no writ) (parties may bargain away separate property in settlement agreements). Because we hold that the parties' agreement is enforceable as a judgment, we need not address Bart's contention that the agreement violates section 26.01 of the Business and Commerce Code. TEX.BUS. & COM.CODE ANN. § 26.01(a), (b)(6) (Vernon 1987) (any *contract* performable over more than one year must be in written form and

signed by the person to be charged). We overrule points eleven and twelve.

■ Bart maintains in his fourteenth and fifteenth points that the trial court erred in finding that the terms and conditions of conservatorship of the parties' minor children are in the best interest of the children. Specifically, Bart argues that the trial court abused its discretion in entering a decree that did not contain any provisions for his possession of the children. The rule 11 stipulations dictated in open court at the January hearing did not provide for any specific periods of possession to be declared for Bart. The record reflects the following proceedings relevant to these points:

> Q. (by Mr. Geary) First of all, with respect to the 12.04 powers, exclusive of the education and domicile, which will be dealt with separately; the parties agree that they will consult with respect to items dealing therewith when at all practical, being understood that there might be emergency care required by the party in possession under certain circumstances and things of that sort where consultation might be impractical. But on other issues, to the extent possible, they agree to discuss and try [to] reach a mutual understanding and agreement. But absent that, Mrs. McLendon would be designated the party making the decision, with the absolute right for Mr. McLendon, if he disputes or questions the propriety thereof, to be able to present the matter to the Court for determination.

Both spouses assented to these and the other terms of the settlement. Further, the court-appointed attorney ad-litem for the parties' children told the trial court:

> MR. MATLOCK: Your Honor, I have seen these people deal with one another and with respect to their children, they've been able to reach agreements, whereas with respect to other matters, they've had extreme difficulty. It's my opinion that based upon what I have seen occur here that these people can and will agree and move in directions to make

agreements between themselves with respect to issues that involve the children.

It is apparent from the record that the parties chose not to provide specific terms for Bart's possession of the children, but that he reserved the right to apply to the court for relief in the future if he was dissatisfied with the arrangements regarding his children. Since Bart agreed to the omission of specific periods of possession, he cannot complain on appeal that the failure to· grant him specific terms is reversible error.

Bart has a remedy if he should ever become dissatisfied with his access to the parties' children. Section 14.08(c)(3) of the Family Code permits the court of continuing jurisdiction to modify the terms and conditions for possession of the children upon a showing that "the order or portion of the decree to be modified has become unworkable or inappropriate under existing circumstances." Tex.Fam.Code Ann. § 14.-08(c)(3)(B) (Vernon Supp.1992). We know of no authority, and have been cited none, which holds that it is reversible error for a trial court to approve a custody settlement that does not specify periods of possession for each joint managing conservator. We overrule points fourteen and fifteen.

### FAILURE TO MAKE SECTION 14.057 FINDINGS

■ In his sixteenth point of error, Bart urges that the trial court erred in refusing to make written findings under section 14.057 of the Family Code because the parties had no valid agreement concerning payment of child support. Bart timely filed a request for findings of fact on child support pursuant to section 14.057 of the Code, but the court refused to make the findings because it found that support was set "by agreement of the parties." Section 14.057 does not require the trial court to make written findings in the child support order unless the child support is contested and the amount of the order is set by the court. Tex.Fam.Code Ann. § 14.057(a) (Vernon Supp.1992). In this case, the amount of support was neither contested nor set by the court; it was set by agreement of the

parties. The trial court did not err when it refused to make section 14.057 findings. We overrule point of error sixteen.

## DISCREPANCIES BETWEEN ORAL RENDITION AND WRITTEN DECREE

In his fourth point, Bart contends that the trial court erred in signing its decree of divorce because the decree contains additional and different terms supplied by the court to which the parties had not agreed. Bart asserts that the judgment should be reversed because there are many differences between the trial court's orally rendered judgment of January 29th and its written decree.

Beth maintains that the alleged discrepancies between the orally rendered judgment and the decree signed by the trial court are objections to the written memorandum of the judgment and not to the underlying judgment itself. Consequently, she urges that any discrepancies should be cured by this Court's modifying the written decree rather than our remanding the case for a new trial. She relies on rule 81(c) of the Texas Rules of Appellate Procedure, which provides that "when the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary to remand to the court below for further proceedings." TEX.R.APP.P. 81(c).

Bart responds that the issue is not whether there is a variance between the court's decree and an agreement, because the parties did not reach an agreement. He argues that the differences between the decree and the parties' proposals at the January hearing merely illustrate the multitude of additional terms that the court added when it realized that the parties' proposals did not amount to a complete agreement. We have already ruled that the parties did reach a complete agreement and, hence, we reject Bart's premise.

■ We agree with Beth that Bart's objections under this point are to the written decree signed by the trial judge, and

not to the oral rendition of judgment in January, 1991. We also agree with Bart that a final judgment which is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that agreement. *Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex.1976). And the trial court has no power to supply terms, provisions, or conditions not previously agreed to by the parties. *Matthews v. Looney*, 132 Tex. 313, 123 S.W.2d 871, 872 (1939). However, we note that in both of these cases the trial court rendered judgment in the form of its written decree. Therefore, the appellate court reversed the trial court's judgment because its rendition of judgment did not conform to the parties' agreement.

■ On the other hand, when the record reflects a clerical variance between a judgment announced in open court and the judgment eventually signed by the trial judge, the appellate court can modify the judgment to correct the mistake. TEX. R.APP.P. 80(b)(2); *Catlett v. Catlett*, 630 S.W.2d 478, 483 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). Whether such an error is clerical or judicial is a question of law. *Id.* In this case, the trial court clearly adopted the rule 11 stipulations read into the record as the court's rendition of judgment. Consequently, we have examined Bart's complaints and compared the relevant portions of the statement of facts and the decree to determine if any of his complaints establish discrepancies in the decree. We agree with Bart that discrepancies exist, but we conclude, as a matter of law, that all of these discrepancies are clerical errors and, hence, are subject to modification by this Court. *Id.*

■ Bart initially complains that the statement of facts refers to a rule 11 stipulation regarding property settlement while the decree refers to a rule 11 stipulation "with respect to conservatorship and support of the children, division of property, payment of contractual support, assumption of obligations and other matters with respect to settlement of the above entitled and numbered cause...." While it is true

that at first counsel limited his remarks to a "stipulation with respect to property settlement," the true scope of the agreement is much broader. Counsel also asked Beth if she had "negotiations and discussions with respect to the division of your community estate?" He then asked if the parties had "discussions and agreements with respect to the conservatorship and special matters dealing with the children in connection with this matter?" Beth responded affirmatively to both questions. Finally, counsel stated, "I will now, if I may, dictate into this record what I understand the terms and conditions of your settlement are." Counsel and the parties then discussed all aspects of the settlement agreement, including property, contractual support, debts, child support, and conservatorship. Nowhere is there any language limiting the terms of the agreement to property division, nor is there any objection by Bart's counsel. We hold that there is no discrepancy between the parties' actions at the January hearing and the recitations in the decree that the parties had entered into a stipulation with respect to matters in addition to property settlement.

■ Bart next complains about a discrepancy regarding the payment of attorney fees. The stipulation and orally rendered judgment provide for payment of $100,000 in attorney fees but did not say to whom. The final divorce decree signed by the trial court, however, states that the money should be paid to Beth as her separate property and also orders Bart to pay another $100,000 in fees to Beth's attorneys. Beth responds that the trial court did no more than follow the law which allows recovery of fees either in the wife's name or by the attorneys as parties. *Cluck v. Cluck*, 647 S.W.2d 338, 340 (Tex. App.—San Antonio 1983, writ dism'd). We agree with Bart that the decree awards Beth $100,000 as attorney fees and that it also orders Bart to pay $100,000 to Beth's attorneys as fees in the matter. The statement of facts reflects that "Mr. McLendon would on January 31, 1991, pay the sum of $100,000 as attorneys fees in this matter." In context, it is clear that these fees were those owed to Beth's attorneys. Accord-

ingly, we modify the judgment to delete the award of $100,000 to Beth as her separate property but leave undisturbed the provision on the last page of the decree, ordering Bart to pay on January 31, 1991, the sum of $100,000 to Beth's attorneys.

■ Bart further complains that the decree provides that his obligation to pay Beth $1,250,000 at the end of ten years shall be reflected by a promissory note, while the stipulation and orally rendered judgment say the obligation shall be reflected by "an instrument in writing." We agree. We modify the decree by deleting from the decree the words "promissory note" and substituting the words "instrument in writing" in reference to the $1.25 million obligation.

■ Bart also objects to the language in the decree that the $1.25 million obligation will be secured by a "pledge of and a security interest in" certain partnership assets when the statement of facts reflects that the obligation will be secured by a "pledge." The statement of facts shows that the obligation would be secured by a pledge and also states, "Additionally, the security agreement which will evidence and be a part of the pledge of the partnership interest will provide...." We agree that the parties did not use the words "security interest in" certain partnership assets in describing the security for the $1.25 million obligation, although we note that the parties did agree that Beth's interest and *security interest* related to "distributions, whether taxable or nontaxable, from the partnership made to the partners after the two year period or after [Bart's] receipt of $500,000." We modify the decree by striking the words "and a security interest in" Bart's partnership interests found on page 20 of the decree.

■ Next, Bart argues that at the January hearing it was agreed that the $1.25 million payment would be due "ten years from the date of signing of the entry of this decree." Yet the trial court ordered payment by January 29, 2001, more than six months earlier than ten years from the date the trial court signed the decree.

However, the statement of facts shows that the parties agreed that the date of entry would be "today," meaning the date of the oral rendition was to be used as the date for payment. Both parties agreed to look to the date of the January hearing as the date on which the payment would be due. Counsel stated, "ten years from the date of entry of this judgment, which would be ... ten years from today would be what ... January 28th...." Opposing counsel corrected him by stating the correct date for that day was January 29th, and counsel restated that the payment would be due January 29th, 2001. We hold that the decree correctly reflects the parties' stipulation of the due date of the $1.25 million obligation.

■ Regarding the prepayment of the $1.25 million obligation to Beth, Bart argues that the decree says "gross distributions" from the partnerships but the statement of facts says "distributions." We disagree. At the oral hearing, counsel stated that "in the event of any distributions made during the two years from this date to Mr. McLendon, the first $500,000 thereof may be received and kept by him as far as the gross distributions without any reference to any receipt by Mrs. McLendon...." Bart also complains of the trial court's undertaking to define the term "gross distributions" found on page 20 of the decree when the parties did not do so in the prove-up. We agree that the parties did not define this term in the hearing; accordingly, we modify the judgment ·by striking that portion of the trial court's definition of "gross distributions" found on page 20 of the decree.

■ In addition, Bart claims the parties generally agreed that his obligation to share distributions with Beth during a certain time period would occur on his "receipt" of the funds, but the decree changes the term to "either actual or constructive receipt." Bart objects to the addition of the word "constructive." Beth argues that the legal meaning of "receipt" includes both constructive and actual receipt, especially when taken in the context of Bart's being a trustee for the benefit of Beth, as

the parties agreed that Bart would be. We agree with Bart; we modify the judgment by striking the word "constructive" modifying the word "receipt" on page 18 of the decree.

■ With respect to Bart's $2 million life insurance policy, he argues the parties agreed that if he died and the $1.25 million obligation to Beth had not yet been paid, Beth would get the proceeds of the insurance in lieu of any remaining payments due. However, he claims the decree gives Beth the insurance proceeds as an additional payment instead of in lieu of the payments due on the $1.25 million. We disagree with Bart. The decree correctly reflects the parties' agreement regarding this life insurance policy.

■ Bart next asserts that the parties had stated to the court that tax treatment of payments as "owelty" applied only to the $1.25 million payment, and the parties did not agree to such treatment as to any of the other payments provided for in the agreement. We agree. We modify the relevant language of the decree on page 17 by striking the reference to the $500,000 payment as intended by the parties "to be owelty for the purpose of equalizing the values of the properties as between the parties."

■ Bart also maintains that the decree omits any reference to the profit-sharing, retirement, and pension-related assets, which Beth admitted would have been part of Bart's property, even though the parties agreed that all of this property, described in Bart's inventory and appraisement and not specifically allocated to Beth, was to be awarded to him. We agree with Bart that the parties agreed that he was to "receive all other assets (other than those awarded to Beth) described in his inventory and appraisement, ... subject to the security agreements which are provided for" and covering "all of the items [on the inventory] which remain as of today (January 29, 1991)." We hold that Bart is entitled to this provision in the written decree, and we modify the judgment to add this language

in that portion of the decree listing property awarded to Bart.

■ In addition, Bart says he agreed to execute all documents determined to be reasonable and necessary by his counsel, but the decree instead orders him to execute "all documents referred to in this Decree." Beth notes, however, that Bart's own proposed decree would have had him execute all documents necessary to carry out the terms of the decree and reserved for the trial court the right to make orders to clarify or enforce the decree. We do not agree with Bart's assertion that he is only required to sign those documents his counsel approves. At the January hearing, he assented when told by the court he would be "required to execute documents in order to effectuate the purposes of this agreement." He cannot now assert his right not to comply with the settlement, especially since he consented to all the terms.

Further, this language is customary in divorce decrees and has reference to the power of the court to issue orders in aid of or in clarification of a prior order under sections 3.71 and 3.72 of the Family Code. The language in the decree requiring the parties each to execute "all documents referred to in this Decree" is not self-executing, and it does no more than permit the trial court to do what it already has the statutory authority to do—to enter such clarification and enforcement orders as may be necessary to carry the agreement of the parties and the order of the court into effect. Moreover, Bart has not complained that in the decree the trial court ordered him to sign a promissory note for $500,000 or a special warranty deed for the home at 4848 Shadywood Lane. He has complained of the order to sign a promissory note rather than an instrument in writing for $1,250,000, and we have ruled in his favor on this point. The only other type of document the trial court ordered Bart to sign, and Beth as well, was "transfer documents for all personalty," and Bart has not complained of this order. We hold this provision of the decree is not at variance with the oral rendition.

■ Bart objects to the trial court's omitting from the decree the admonitions it gave Beth at the January hearing prohibiting Beth from doing anything that would harm Bart in other pending litigation. The decree clearly orders Beth to notify Bart in case she is contacted by someone in connection with Bart's partnership interests so that he may furnish a representative at any judicial proceeding in which she answers questions. Furthermore, Bart's representative has the right to assert a privilege and prevent Beth from answering any questions without a court order. We hold that the written decree is consistent with the parties' agreement in this respect.

■ As to parental rights and duties, Bart asserts that at the hearing the parties agreed "that the parties would be named joint managing conservators ... with the rights provided in 12.04, subject to however, two specific items." He complains that the decree gives those rights to Beth, but not to him, and only gives him the right to consult with Beth where practical. Bart also objects because the decree does not require Beth to consult with him regarding matters pertaining to education of the children, even though the parties agreed to consult in the selection of schools. And he argues that the trial court inserted additional provisions concerning his rights which are not in the statement of facts and are meaningless, since they are limited to periods when he has possession of the children. Bart especially complains that he is granted no periods of possession of his own children, even though the trial court, in its findings of fact, found that the rebuttable presumption that Bart should have possession in accordance with the "standard order" had not been rebutted by the evidence.

First, Bart misstates the orally rendered judgment which actually states, "agreed that the parties will be named as joint managing conservators of the three boys, with Beth being designated as conservator with primary physical possession of the children and with the rights provided in 12.04, subject to however, two specific items." Bart never had 12.04 powers and

the written decree accurately states that fact. And the "meaningless" provisions Bart alludes to are section 14.04 powers, which all possessory conservators have during their periods of possession. Bart is entitled to these provisions during any periods when he has possession of the children. Also, the decree accurately states "that with respect to the selection of private schools for the children, the parties first consult with each other and attempt to reach a decision." It further provides for mediation by a third party in case of a dispute with Beth having the right to designate the school and Bart having the option to go to court to determine the proper school. These are rights agreed to in the trial court. We addressed the lack of provision for specific periods of possession in points of error fourteen and fifteen above and need not address that complaint here. We hold that the relevant provisions in the decree are consistent with the parties' agreement.

Also, with regard to the children, Bart argues the provisions contained in the written decree concerning the children's medical expenses are more expansive than those agreed to at the oral rendition, including the addition of an order for Bart to indemnify Beth. We hold that the provisions in the decree correctly reflect the agreement of the parties regarding Bart's responsibilities in relation to the children's medical and dental expenses and their other health-care costs. However, we agree that the parties did not agree on the indemnification clause. We modify the decree by striking the clause on page 12 of the decree reading, "and he shall indemnify Mary Elizabeth B. McLendon for any failure to pay same."

## SANCTIONS FOR FRIVOLOUS APPEAL

In conclusion, Beth would have us sanction Bart for a frivolous appeal, taken without sufficient cause and for purposes of delay, causing her severe prejudice. We conclude that Bart had reasonable grounds to believe that the judgment would be reversed. Consequently, we overrule Beth's request for sanctions. *St. Louis S.W. Ry.*

*v. Marks,* 749 S.W.2d 911, 915 (Tex.App.—Texarkana 1988, writ denied).

We modify the judgment as indicated above and, as modified, the judgment is affirmed.