

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00356-CV

PUTZ FARMS, A JOINT VENTURE;           APPELLANTS
DR. HERBERT R. PUTZ; AND
SIGNE PUTZ

V.

CROP PRODUCTION SERVICES,           APPELLEE
INC.

----------

### FROM THE 362ND DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. 2009-40347-362

----------

## MEMORANDUM OPINION[1]

----------

In three issues, Appellants Putz Farms, a Joint Venture; Dr. Herbert R. Putz; and Signe Putz (collectively, Putz) appeal from an agreed judgment in favor of Appellee Crop Production Services, Inc. (CPS). We reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

## Background

CPS brought a suit on a sworn account against Putz. After mediating the case, the parties entered into a "Compromise, Settlement and Release Agreement" (the Settlement Agreement) to be effective March 6, 2013. The Settlement Agreement provided in relevant part as follows:

### 1. Payment, Agreed Judgment, and Dismissal

(a) Putz will pay to CPS the total amount of $800,000 plus interest (the **"Settlement Amount"**) as set forth below:

(i) $150,000 to be received within five business days of 6 March 2013;

(ii) $325,000 plus 3% (simple) interest accrued since 6 March 2013 to be received on or before 31 July 2013; and

(iii) $325,000 plus 3% (simple) interest accrued since 6 March 2013 to be received on or before 31 January 2014.

. . . .

(b) **Agreed Judgment.** Contemporaneously with the execution of this Agreement, the Parties[2] will execute an agreed judgment (the **"Agreed Judgment"**) in favor of CPS and against Putz, in the amount of $1,300,000 to accrue 18% interest from the date the Agreed Judgment is signed, in substantially the form attached as *Exhibit A.* CPS will hold the Agreed Judgment in trust, through its counsel Dulan Elder, pending fulfillment by Putz of all payment obligations under section 1.(a) above. CPS shall <u>not</u>, however, file or record the Agreed Judgment, nor shall CPS have the right to enforce the Agreed Judgment, except in accordance with paragraph 2, below.

---

[2]The Settlement Agreement defines "Parties" as CPS and Putz.

**(c)** **Termination of rights.** If and when all payments have been made, CPS shall dismiss the case with prejudice, within 15 days of receipt of final payment in full satisfaction of the Settlement Amount.

### 2. Events of Default and Enforcement

**(a)** **Monetary Default.** The failure to make any payment in accordance with the terms of paragraph 1(a) of this Agreement . . . shall constitute an **"Event of Monetary Default"**.

**(b)** **Enforcement of the Agreed Judgment**

**(i)** Upon the occurrence of an Event of Monetary Default, CPS shall provide to counsel for Putz written notice (**"Default Notice"**) of such default. If such default is not cured by receipt of payment by Putz within 15 business days of the Default Notice, CPS shall then immediately have all rights to file, record and enforce the Agreed Judgment (less credit of all amounts paid).

**(ii)** Putz and CPS shall cooperate as appropriate to maintain this case on the Court's docket pending fulfillment of settlement obligations, and/or filing of the Agreement Judgment.

Putz timely paid the first settlement payment on March 7, 2013, and the parties executed an Agreed Judgment. On July 16, 2013, before the second settlement payment was due, CPS's counsel forwarded the Agreed Judgment to the trial court. CPS did not enclose a signed copy of the Settlement Agreement with the Agreed Judgment. The cover letter addressed to the court coordinator stated in relevant part as follows:

> The parties to this lawsuit have reached a mediated settlement agreement which has been memorialized by a written settlement agreement. Under the terms of that agreement, the parties have agreed to enter into an Agreed Judgment which is to be signed by the Judge but held in trust pending performance of the

3

payout of the agreed amount by [Putz]. The final payment under the agreed settlement is due January 31, 2014.

.  .  .  .

We request that the Court sign the judgment but that it not be entered into the Court's minutes or filed among the papers of the cause and instead be returned to the undersigned in the enclosed self-addressed stamped envelope to be held in trust in accordance with the parties' agreement.

If [the trial court] has problems with this arrangement, then please advise and we will seek to address the Court's concerns.

On July 22, 2013, a visiting judge signed the Agreed Judgment, and the Agreed Judgment was filed with the papers of the case as part of the record. The clerk sent notice of the judgment to Putz.

Putz timely filed a motion for new trial, arguing that good cause existed for granting Putz a new trial because (1) CPS's representation to the trial court in its July 16 letter that the Agreed Judgment was to be signed by the trial court was misleading in that the Settlement Agreement did not contemplate that the Agreed Judgment would be sent to the trial court for signature prior to the occurrence of a default under the Settlement Agreement and (2) after it was signed, the Agreed Judgment was filed in the records of the case even though Putz had not defaulted. CPS responded that the Agreed Judgment should not be set aside because (1) the parties contemplated that the trial court would sign the Agreed Judgment and (2) by that time, Putz had failed to make the July 31, 2013 settlement payment, which permitted CPS to record the Agreed Judgment under

4

the terms of the Settlement Agreement, so that any error was harmless. The trial court denied the motion for new trial, and Putz appealed.

**Analysis**

In three issues, Putz argues that the trial court erred in signing the Agreed Judgment because (1) the Agreed Judgment was procured by fraud in misrepresenting that the parties had agreed that it was to be signed by the trial court before any default; (2) the Settlement Agreement was not enforceable as a rule 11 agreement because it was not on file with the trial court at the time the Agreed Judgment was signed; and (3) CPS did not seek to enforce the Settlement Agreement as a contract through proper pleading, notice, hearing, and proof.

In parts of its first and second issues, Putz complains that the Agreed Judgment was not in strict or literal compliance with the Settlement Agreement. As pointed out to the trial court in its motion for new trial, Putz argues on appeal, and we agree, that the Settlement Agreement does not contain a provision permitting CPS to send the Agreed Judgment to the trial court for signature before default by Putz and that Putz was not in default when the trial court signed the Agreed Judgment on July 22, 2013. Thus, the trial court should not have signed the Agreed Judgment and filed it in the papers of the case.

An agreed judgment based upon a settlement agreement must be in strict or literal compliance with the terms of that agreement. *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976). A trial court has no power to

5

supply terms, provisions, or conditions not previously agreed upon by the parties. *Matthews v. Looney*, 132 Tex. 313, 317, 123 S.W.2d 871, 872 (Tex. 1939); *Tinney v. Willingham*, 897 S.W.2d 543, 544 (Tex. App.—Fort Worth 1995, no writ); *McLendon v. McLendon*, 847 S.W.2d 601, 610 (Tex. App.—Dallas 1992, writ denied). If the terms of an agreed judgment conflict with the terms of the underlying settlement agreement, the judgment will be unenforceable. *Nuno v. Pulido*, 946 S.W.2d 448, 451 (Tex. App.—Corpus Christi 1997, no writ); *Tinney*, 897 S.W.2d at 544. If the discrepancy in the terms results from a clerical error, the appellate court may modify the conflicting term to conform to the settlement agreement. *McLendon*, 847 S.W.2d at 610. However, a judgment based upon judicial error must be reversed and remanded to the trial court for entry of a judgment that conforms to the terms of the parties' settlement agreement. *Donzis v. McLaughlin*, 981 S.W.2d 58, 63 (Tex. App.—San Antonio 1998, no pet.); *Clanin v. Clanin*, 918 S.W.2d 673, 678 (Tex. App.—Fort Worth 1996, no writ); *McLendon*, 847 S.W.2d at 610.

Whether an error is clerical or judicial is a question of law. *Finlay v. Jones*, 435 S.W.2d 136, 138 (Tex. 1968). A clerical error is a mistake or omission that prevents the judgment as entered from accurately reflecting the judgment that was actually rendered. *Universal Underwriters Ins. Co. v. Ferguson*, 471 S.W.2d 28, 29–30 (Tex. 1971). A judicial error arises from a mistake of law or fact that requires correction through judicial reasoning or determination. *W. Tex. State Bank v. Gen. Res. Mgmt. Corp.*, 723 S.W.2d 304, 306 (Tex. App.—Austin 1987,

writ ref'd n.r.e.). In other words, a judicial error occurs in the rendering, as opposed to the entering of a judgment. *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986).

Here, paragraph 1(b) of the Settlement Agreement provided that the parties would execute an Agreed Judgment contemporaneously with the execution of the Settlement Agreement and that CPS would hold the Agreed Judgment in trust and not file or record it unless there was an Event of Monetary Default under paragraph 2. Paragraph 2 provided that the failure to make any payment in accordance with the payment terms in paragraph 1(a) constituted a Monetary Default, and upon the occurrence of a Monetary Default, CPS was required to give Putz written notice of the default and fifteen business days to cure the default before filing, recording, or enforcing the Agreed Judgment. Putz was not in Monetary Default under paragraph 2 when the Agreed Judgment was signed and filed among the papers of the case on July 22, 2013, because the second payment was not due until July 31, 2013. Thus, the Agreed Judgment was not in strict or literal compliance with the terms of the Settlement Agreement. This is not a clerical error; it is a judicial error that cannot be corrected by this court's modification and rendition of an appropriate judgment.[3] *See Donzis*, 981 S.W.2d at 64–65; *Clanin*, 918 S.W.2d at 678.

---

[3]While we conclude that the rendering of the Agreed Judgment was a judicial error, we note that a copy of the signed Settlement Agreement was not filed with the letter from CPS's attorney asking the trial court to sign the Agreed Judgment. Moreover, the record does not reflect whether the visiting judge

7

CPS asserts that written correspondence between the parties' attorneys demonstrates that the parties contemplated the Agreed Judgment would be immediately submitted to the trial court for signature and would be filed or recorded only upon Putz's default. The Settlement Agreement, however, could be "modified only in writing by a document signed by the Parties affected by the modification." The correspondence does not evidence an intent to modify the terms of the Settlement Agreement, and it is not signed by the parties. Thus, the correspondence did not modify the terms of the Settlement Agreement, which only provided that the parties—not the trial court—would sign the Agreed Judgment before default. Nor can the correspondence be considered as extrinsic evidence of the intent of the parties absent any ambiguity, and we find none. *See Chapman v. Hootman*, 999 S.W.2d 118, 123 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("Absent a finding of ambiguity, a court must interpret the meaning and intent of a contract from the four corners of the document without the aid of extrinsic evidence."). Lack of clarity or disagreement over interpretation of contract language does not render the language ambiguous. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

reviewed the letter—which was addressed to the court coordinator—prior to signing the Agreed Judgment.

8

The contract language here is not reasonably susceptible to more than one meaning. CPS's interpretation, which is set forth in its July 16, 2013 letter to the court coordinator, conflicts with the rules of civil and appellate procedure. Once the trial court signs a judgment, it should be entered by the clerk in the minutes of the court and filed with the other documents in the case. *See Dunn v. Dunn*, 439 S.W.2d 830, 832 (Tex. 1969); *Oak Creek Homes, Inc. v. Jones*, 758 S.W.2d 288, 290 (Tex. App.—Waco 1988, no writ). But a signed judgment is valid whether or not it is filed or entered in the record. *See In re Barber*, 982 S.W.2d 364, 367 (Tex. 1998) (orig. proceeding). The signing is significant because, among other reasons, the deadlines for postjudgment motions and for perfecting an appeal start to run on the date the judge signs the judgment. Tex. R. App. P. 26.1; Tex. R. Civ. P. 306a(1), 329b(a), (b), (g). Likewise, the period of the trial court's plenary power is calculated from the date of signing. Tex. R. Civ. P. 306a(1), 329b(d). Giving a signed judgment back to a party's counsel to hold "in trust" is not contemplated by the rules. The timetables would still run from the date of signing. CPS's proposed interpretation of the Settlement Agreement is incompatible with the rules of civil and appellate procedure and would lead to an absurd result. When possible, we will avoid a construction that is unreasonable, inequitable, or oppressive, or would lead to an absurd result. *Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.) (citing *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987); *Lane v. Travelers Indem. Co.*, 391 S.W.2d 399, 402 (Tex. 1965)).

CPS also argues that because subsequent to the date the Agreed Judgment was signed, Putz defaulted on the Settlement Agreement by not paying the July 31, 2013 settlement payment, Putz was not harmed by the premature entry of the Agreed Judgment. We fail to see how the premature entry of a judgment in the amount of $1,300,000 plus postjudgment interest accruing at the rate of eighteen percent from the date the judgment was signed is not harmful. Moreover, even assuming that Putz defaulted on the July 31, 2013 payment, a question we need not reach, CPS had the right to file, record, and enforce the Agreed Judgment only after CPS provided written notice of default and Putz failed to cure the default within fifteen business days of the notice. And even if we were to adopt CPS's logic, there are no pleadings or evidence to establish that CPS provided the required notice after Putz's alleged default to entitle it to file, record, and enforce the Agreed Judgment.

Accordingly, we sustain Putz's first and second issues in part. Because these issues are dispositive of the appeal, we need not address the remainder of Putz's first and second issues or its third issue. *See* Tex. R. App. P. 47.1.

## Conclusion

Having sustained Putz's first and second issues in part, we reverse the trial court's judgment and remand the case to the trial court for further proceedings. *See* Tex. R. App. P. 43.2(d).

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and GABRIEL, JJ.

DELIVERED:  March 12, 2015