

# NUMBER 13-21-00174-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

PAUL DOUGLAS LAUTERBACH,                                             Appellant,

v.

CHRISTINE ANN LAUTERBACH,                                           Appellee.

### On appeal from the 267th District Court
### of Calhoun County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Memorandum Opinion by Chief Justice Contreras**

Appellant Paul Douglas Lauterbach appeals from the trial court's entry of a final

judgment in his divorce from appellee Christine Ann Lauterbach. By five issues, Paul

argues that the trial court erred by: (1–3) improperly dividing Paul's retirement accounts;

(4) awarding Christine attorney's fees; and (5) denying Paul's motion for new trial. We affirm as modified in part and reverse and remand in part.

## I.    BACKGROUND

In February 2020, after nearly twenty-three years of marriage, Paul filed for divorce from Christine, and Christine filed a counter-petition.[1] Both parties expected to enter into a written agreement concerning the division of their marital estate. Paul filed an "inventory and appraisement of all assets and liabilities." Christine did not.

Before the trial court held a final divorce hearing in November 2020, the parties agreed to a proposed division of marital property, which they labeled and referred to as Exhibit A. At the November hearing, Christine testified that Exhibit A represented a fair and just division of the parties' community estate. Most relevant to this appeal, Christine acknowledged and agreed to: (1) a 50/50 split of the funds in Paul's Merrill Lynch IRA retirement plan after $90,000 had been credited to Paul as his separate property; (2) a 50/50 split of the funds in Paul's Merrill Edge retirement plan; and (3) a 50/50 split of the funds in Paul's JP Morgan Smart Retirement plan. Paul initially expressed disagreement with how Exhibit A treats the division of certain real property but ultimately requested the division of property be approved as dictated in Exhibit A. The court admitted Exhibit A into evidence, asked the parties to draft an agreed final divorce decree based on the evidence, and stated that it wanted both attorneys and both parties to sign the decree. The trial court concluded the hearing by noting that when the parties "get [the divorce decree] signed, I will sign it, but as of now both of you are divorced."

---

[1] No children were born of the marriage.

Christine's attorney drafted the final divorce decree. Unlike Exhibit A, which listed the division of retirement funds by the plan names and in dollar terms, the divorce decree further divided the Merrill Lynch IRA and Merrill Edge plans by various associated account numbers and listed the division of all accounts in terms of percentages. Four account numbers are associated with the Merrill Lynch IRA plan, and one account number is associated with the Merrill Edge plan. The JP Morgan plan remains listed without an associated account number but is named in the divorce decree as the "Tokai Carbon 401(k) plan."[2]

In a March 3, 2021 letter to the trial court, before the divorce decree was signed, Paul's attorney suggested certain edits to the proposed decree, including that it should specifically state the dollar amount of each of the six retirement account numbers and "specific language as to the date the funds [in the accounts] will be locked." As it stood then, Paul was unaware whether the retirement funds, which "fluctuate[] with the market," would be split as of the date of the November 2020 hearing—when the trial court stated "as of now both of you are divorced"—or the date the divorce decree would ultimately be signed by the trial court.

Christine and Christine's attorney, but neither Paul nor his attorney, signed the divorce decree without Paul's suggested edits. Nonetheless, on March 8, 2021, the trial court signed the "agreed final decree of divorce." On April 7, 2021, Paul filed a motion for new trial, asserting the "evidence [was] legally and factually insufficient to support [the

---

[2] Tokai Carbon is Paul's employer.

c]ourt's judgment as to the division of [the retirement] accounts," and largely echoing the concerns he raised in his attorney's March 3 letter.

The trial court held a hearing on Paul's motion for new trial on May 4, 2021. Following the hearing, the court denied Paul's motion for new trial and clarified that "all dates as it relates to monies will be as of the date of the divorce decree." Christine's attorney requested nearly $2,000 in attorney's fees allegedly incurred by Christine "post prove-up," but she did not present any evidence regarding the fees. The trial court granted the request for attorney's fees. Appellant then filed his notice of appeal.[3]

## II.   DIVISION OF MARITAL ESTATE

By his first three issues, Paul argues the trial court erred by improperly dividing his and Christine's marital estate. Specifically, Paul claims the trial court failed: (1) to "divide the parties' community property in conformity with the evidence and the parties' agreement"; (2) to "specifically segregate Paul's separate property and confirm it as separate property"; and (3) to "divide the estate of the parties in a manner that is just and right."

## A.   Applicable Law & Standard of Review

In a divorce decree, the trial court must order a division of the marital estate "in a manner that the court deems just and right, having due regard for the rights of each party."

---

[3] On May 26, 2021, Christine filed a motion for judgment nunc pro tunc to correct two clerical errors in the divorce decree. On December 21, 2021, the court entered an "agreed final decree of divorce judgment nunc pro tunc" correcting the two clerical errors. All references to the divorce decree herein will refer to the nunc pro tunc judgment. *See* TEX. R. APP. P. 27.3 ("After a[] . . . judgment in a civil case has been appealed, if the trial court modifies the . . . judgment, . . . the appellate court must treat the appeal as from the subsequent . . . judgment and may treat actions relating to the appeal of the first . . . judgment as relating to the appeal of the subsequent . . . judgment.").

TEX. FAM. CODE ANN. § 7.001; *see Pearson v. Fillingim*, 332 S.W.3d 361, 362 (Tex. 2011) (per curiam). This "just and right" standard is the sole method the court utilizes to account for and divide community property upon divorce. *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998). "Such a standard may at times lead to a disproportionate division of assets and liabilities of the parties, depending on the circumstances that courts may consider in refusing to divide the marital estate equally." *Id.* Thus, the property division need not be equal, but there must be some reasonable basis for an unequal division of the property. *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981) (listing non-exclusive factors a trial court considers in an unequal division of the marital estate); *O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.).

We review the trial court's division of the community estate upon divorce for an abuse of discretion. *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (citing *Murff*, 615 S.W.2d at 698). A trial court has wide discretion in making a just and right division, and we presume the trial court properly exercised its discretion. *Banker v. Banker*, 517 S.W.3d 863, 869 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied) (citing *Handley v. Handley*, 122 S.W.3d 904, 907 (Tex. App.–Corpus Christi–Edinburg 2003, no pet.)). Appellant bears the burden to show from the record that the division was so disproportionate, and thus unfair, that it constitutes an abuse of discretion. *Id.* at 870 (citing *O'Carolan*, 414 S.W.3d at 311); *Handley*, 122 S.W.3d at 907 ("[A] trial court's division of property that is manifestly unjust is an abuse of discretion.").

In an abuse of discretion analysis, legal and factual sufficiency are not independent grounds of error, but rather relevant factors in assessing whether the trial court abused

5

its discretion. *Banker*, 517 S.W.3d at 869 (citing *Handley*, 122 S.W.3d at 904). "There is generally no abuse of discretion on grounds of insufficiency if some probative evidence supports the trial court's findings." *Id.*; *see Handley*, 122 S.W.3d at 907. When a party agrees to a proposed division of property that the trial court deems just and right, its complaints on appeal that the same suggested division of property was an abuse of discretion should not be heard. *Coggin v. Coggin*, 738 S.W.2d 375, 378 (Tex. App.—Corpus Christi–Edinburg 1987, no writ); *Weaks v. Weaks*, 471 S.W.2d 454, 456 (Tex. App.—Beaumont 1971, writ dism'd).

In a divorce, a trial court will divide community property among the parties, but it cannot divest either spouse of his or her separate property. *See Pearson*, 332 S.W.3d at 363–64; *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140–41 (Tex. 1977). "If the trial court mischaracterizes a spouse's separate property as community property and awards some of the property to the other spouse, then the trial court abuses its discretion and reversibly errs." *Kelly v. Kelly*, 634 S.W.3d 335, 348 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (quoting *Sharma v. Routh*, 302 S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2009, no pet.)).

Pursuant to Rule 11, no agreement between the parties is enforceable "unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. When parties have reached a property division agreement, a final judgment based on that agreement must be in "strict or literal compliance with that agreement." *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976). The trial court cannot supply, modify, or omit material terms to the

6

agreement. *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex.2006). In essence, the trial court must act in a ministerial capacity in signing and entering the agreement. *Nuno v. Pulido*, 946 S.W.2d 448, 451 (Tex. App.—Corpus Christi–Edinburg 1997, no writ).

When a final judgment based on a property division agreement is not in strict compliance with the terms of the agreement recited on the record, the judgment must be set aside. *Chisholm*, 209 S.W.3d at 98. But "when the record reflects a clerical variance between a judgment announced in open court and the judgment eventually signed by the trial judge, the appellate court can modify the judgment to correct the mistake." *McLendon v. McLendon*, 847 S.W.2d 601, 610 (Tex. App.—Dallas 1992, writ denied); *see* TEX. R. APP. P. 43.2(b); *Int'l Bus. Machines Corp. v. Lufkin Indus., Inc.*, 564 S.W.3d 15, 38 (Tex. App.—Tyler 2017) ("This court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so."), *aff'd in part, rev'd in part on other grounds*, 573 S.W.3d 224 (Tex. 2019). Whether an error in a judgment is clerical, such that we may modify the judgment to correct the mistake, is a question of law. *Keim v. Anderson*, 943 S.W.2d 938, 946 (Tex. App.—El Paso 1997, no writ); *McLendon*, 847 S.W.2d at 610 (citing *Catlett v. Catlett*, 630 S.W.2d 478, 483 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.)).

## B.    Analysis

We begin with three conclusions that guide our analysis of Paul's first three issues. First, while Exhibit A was not signed by the parties, it was reduced to writing, agreed to in open court, and entered of record. *See* TEX. R. CIV. P. 11. Furthermore, the parties referred to Exhibit A as an agreed division of property and testified that the divorce decree

7

would incorporate Exhibit A. Thus, Exhibit A represents the parties' agreed division of property.

Second, to the extent we find any discrepancies between Exhibit A and the divorce decree, we conclude that each represents a clerical error that is subject to modification by this Court. *See McLendon*, 847 S.W.2d at 610. The record "clearly reflects that the trial judge intended the . . . written judgment to be the same as the judgment orally rendered" at the final divorce hearing. *Catlett*, 630 S.W.2d at 483; *see Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex. 1982) ("A judgment is in fact rendered whenever the trial judge officially announces his decision in open court . . . in his official capacity for his official guidance whether orally or by written memorandum the sentence of law pronounced by him in any cause."). First, the divorce decree states that "this divorce [was] judicially pronounced and rendered . . . on November 5, 2020." Next, Exhibit A was entered into the record and both Paul and Christine testified to the agreed terms thereof. The trial court stated on the record that it would "grant the divorce and grant the agreements, as dictated into the record, as well as Exhibit A." The court then asked the parties to prepare the decree to reflect that conclusion and stated that "when y'all get that signed, I will sign it, but as of now both of you are divorced." *See Samples Exterminators*, 640 S.W.2d at 875 ("In the instant case, after the parties voiced their approval of the settlement dictated in open court, the trial court rendered judgment by ordering them to sign and follow the agreement."); *McLendon*, 847 S.W.2d at 610 (concluding trial court's adoption of Rule 11 agreement read into record constituted rendition of judgment); *Oak Creek Homes, Inc. v. Jones*, 758 S.W.2d 288, 290–91 (Tex. App.—Waco 1988, no writ)

8

(concluding that trial court's statement that "I'll grant all the relief you've asked for" regarding pleaded and proved damages constituted rendition of judgment); *Balogh v. Ramos*, 978 S.W.2d 696, 700 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied) (concluding that trial court's statements on the record that it would grant certain relief and damages constituted rendition of judgment). Accordingly, variances between the trial court's judgment made in open court and the final divorce decree are subject to modification. *See McLendon*, 847 S.W.2d at 610.

Third, in his motion for new trial, Paul argued that the record remains unclear as to the date on which the various retirement plan funds are to be divided. The court stated that "all dates as it relates to monies will be as of the date of the divorce decree." It is evident from the new trial hearing transcript that the trial court's "date of the divorce decree" holding refers to March 8, 2021, when the trial court signed the decree. However, that conclusion was erroneous. As noted, the trial court rendered judgment in this case at the conclusion of the November 5, 2020 final divorce hearing. Accordingly, the parties were divorced as of that date. Courts may not divest spouses of their separate property. *Pearson*, 332 S.W.3d at 363–64; *Eggemeyer*, 554 S.W.2d at 140–41. Post-divorce increases in the value of an individual's retirement plans which may be attributed to the person's continued employment, such as raises, promotions, services rendered, and post-divorce contributions, are the individual's separate property and are not subject to division. *Boyd v. Boyd*, 67 S.W.3d 398, 408 (Tex. App.—Fort Worth 2002, no pet.); *see Berry v. Berry*, 647 S.W.2d 945, 947 (Tex. 1983). In this case, awarding Christine any potential increase in the amount of Paul's retirement plan funds between November 5,

9

2020, and March 8, 2021, would constitute error. *See Boyd*, 67 S.W.3d at 408. Consequently, the parties are to divide the retirement accounts 50/50 based on the account values on November 5, 2020.

### 1.      Alleged Evidentiary Discrepancies

By his first issue, Paul argues the divorce decree "must be reversed and the case remanded to the trial court so that it can be readily determined what accounts are to be divided, and how much of each account was awarded to each party." Paul lists six alleged "discrepancies" between the evidence and the divorce decree that he believes "must be resolved." We address each alleged discrepancy in turn.

### a.      Specific Account Numbers

Paul first contends that the trial court erred in its division of the marital estate because Exhibit A, unlike the divorce decree, does not list specific account numbers associated with each of the three relevant retirement plans. As indicated, Exhibit A splits the Merrill Lynch IRA plan funds 50/50 after $90,000 has been subtracted and designated as Paul's separate property. The trial court heard Christine's testimony that she believed such a division to be just and right, and Paul testified that he wanted a divorce based on the evidence presented in Exhibit A. By clarifying the four specific account numbers associated with the Merrill Lynch IRA plan, the divorce decree does not change the underlying agreed division of property in Exhibit A or include additional provisions. The parties are still to receive a 50/50 split of each of the Merrill Lynch IRA accounts after $90,000 from the plan as a whole has been separated and designated as Paul's separate property. On this issue, we conclude that the decree conforms with Exhibit A. *See*

10

*Handley*, 122 S.W.3d at 907; *Vickrey*, 532 S.W.2d 292.

### b.        JP Morgan Smart Retirement Plan Name

Paul next argues that the divorce decree improperly lists the JP Morgan retirement plan as the "Tokai Carbon 401(k)" plan. Paul notes "[t]he problem is that the Tokai Carbon 401(k) is not listed on Exhibit A at all. . . . One must go to Paul's Inventory to see the correct name of the account is 'JP Morgan Smart Retirement Income Fund.'" True as that fact may be, the trial court's entry of the divorce decree with alternative terminology does not rise to the level of an abuse of discretion.

Exhibit A lists the JP Morgan plan as the "JP Morgan Smart Retirement" plan. Further, Christine testified at the final divorce hearing that the three retirement accounts at issue were those named in Exhibit A. And Paul testified that he agreed to the division as stipulated in Exhibit A. It is thus evident from the record that "Tokai Carbon 401(k)" refers to the JP Morgan Smart Retirement plan. Indeed, Paul concedes that there is no confusion or ambiguity that the Tokai Carbon 401(k) plan refers to the JP Morgan Smart Retirement account. Again, we conclude that the decree conforms with Exhibit A in this regard. *See Handley*, 122 S.W.3d at 907; *Vickrey*, 532 S.W.2d 292..

### c.        JP Morgan Smart Retirement Plan Value

Paul next asserts that the JP Morgan account's value is listed in his inventory and appraisement as $11,524.57 but is listed in his attorney's March 3, 2021 letter to the trial court as $14,741.30. Paul argues that the divorce decree "must be reversed and remanded so that the . . . trial court [can] decide which value to use."

Initially, "[a] trial judge is presumed to consider only the testimony and exhibits

11

properly in evidence." *Barnard v. Barnard*, 133 S.W.3d 782, 788 (Tex. App.—Fort Worth 2004, pet. denied). Moreover, "[u]nless a party's inventory and appraisal has been admitted into evidence, it may not be considered as evidence of a property's characterization of value." *Banker*, 517 S.W.3d at 871 (citing *Barnard*, 133 S.W.3d at 788–89); *see Tschirhart v. Tschirhart*, 876 S.W.2d 507, 509 (Tex. App.—Austin 1994, no writ) (holding that a trial court may take judicial notice of an inventory, but "unless a party's inventory is formally admitted into evidence at trial, that party may not rely on the inventory as evidence on appeal"). Neither Paul's inventory and appraisement nor his attorney's letter were admitted into evidence. Exhibit A was admitted and lists the JP Morgan account's value as $11,524.57.

In any event, there was no need for the decree to state the precise dollar value of the account. Regardless of the precise value, the parties agreed to split the account funds 50/50. That value is to be determined as of November 5, 2020.

### d. Merrill Lynch IRA Plan Account Number Mistake

Paul next alleges that paragraphs P-8.a. and R-6.a. of the decree improperly list the relevant Merrill Lynch IRA account number as [xxx-x]9143, when it is listed in his inventory and appraisement as [xxx]096. Again, Paul's inventory was not in evidence and, therefore, may not be considered as evidence. *See Banker*, 517 S.W.3d at 871. Further, as we have previously concluded, the trial court did not err by entering the divorce decree with specified account numbers.

Paul also notes that paragraphs P-8.b. and R-6.b. of the divorce decree improperly list an account with the number [xxx-x]0230. However, this issue is moot, as the error was

12

corrected in the trial court's judgment nunc pro tunc, which lists the correct account number as [xxx-x]0597.

### e. Merrill Lynch IRA Plan Separate Property Value

The fifth alleged discrepancy Paul complains of concerns the value of his separate property. Paul states that his inventory and appraisement claims $97,000 as separate property, but the decree states that only $90,000 should be subtracted from the IRA as his separate property. Once again, Paul's inventory and appraisement was not in evidence and, therefore, may not be considered as evidence. *See Banker*, 517 S.W.3d at 871. What is in evidence is Exhibit A and Christine's and Paul's testimony agreeing to the terms thereof. Exhibit A indicates that the IRA is to be split after $90,000 has been subtracted and assigned as Paul's separate property. The divorce decree states the same. There is no error on this point.

### f. Merrill Lynch IRA Plan Account Totals

The final discrepancy Paul complains of concerns the total value of his Merrill Lynch IRA. He states that "Exhibit A lumps all the IRA accounts into one figure, to wit: $1,530,253.00." By contrast, "listing each account separately by account number, as set out in the [divorce d]ecree, yields a lower number, $1,496,073.32." As noted, the relevant retirement accounts are to be divided using the value of the accounts as of November 5, 2020. Again, regardless of the precise value of the accounts as of that date, the parties can properly divide the accounts per that guidance.

In sum, the divorce decree sufficiently conforms with Exhibit A. *See Handley*, 122 S.W.3d at 907. We overrule Paul's first issue.

13

## 2.     Division of Paul's Separate Property

By his second issue, Paul argues that the trial court erred by failing to specifically segregate his separate property and confirm it as his separate property. Paul first states that "[g]laringly absent from the [divorce d]ecree is any order confirming Paul's separate property interest in the Merrill Edge account or the Merrill Lynch account xxx-x[91]43." However, Exhibit A clearly reflects that the Merrill Lynch IRA is to be split "less 90,000 from balance[.]" Furthermore, both parties testified at the final divorce hearing that Exhibit A reflected their agreed division of the property. Christine explicitly testified that she agreed to a 50/50 split of the Merrill Lynch IRA after $90,000 had been subtracted from the overall plan value as Paul's separate property. Finally, the divorce decree plainly states in paragraphs P-8.a. and R-6.a. that each party is to receive "50% of the balance remaining after $90,000.00 that is recognized as the separate property of PAUL D. LAUTERBACH is subtracted, in the Merrill Lynch IRA in the name of PAUL D. LAUTERBACH, Account number xxx-x9143." Given that, we disagree with Paul's assessment that the trial court impermissibly divested Paul of his separate property in the Merrill Lynch IRA. *See Pearson*, 332 S.W.3d at 363–64; *Eggemeyer*, 554 S.W.2d at, 140–41; *Kelly*, 634 S.W.3d at 348.

Paul next argues that "[a]lso absent from the [divorce d]ecree is any disposition of Paul's separate property interest in the Merrill Edge account." Paul states that his inventory and appraisement lists $1,233.80 as his separate property but the divorce decree does not. However, the burden is on the parties to provide the trial court with sufficient information upon which to exercise its discretion in dividing the marital estate.

14

*Banker*, 517 S.W.3d at 870; *see* TEX. FAM. CODE ANN. § 3.003. Paul failed to present any evidence rebutting the presumption that all property within his Merrill Edge account was community property. *See* TEX. FAM. CODE ANN. § 3.003. Paul's inventory and appraisement was not in evidence, *see Banker*, 517 S.W.3d at 871, and neither Exhibit A nor the parties' testimony at the final divorce hearing contemplate a subtraction of $1,233.80 from the Merrill Edge account as Paul's separate property. At the final divorce hearing, Paul agreed to a division of property as set forth in Exhibit A. We will not now conclude that the trial court abused its discretion in dividing the parties' estate accordingly. *See Coggin*, 738 S.W.2d at 378; *Weaks*, 471 S.W.2d at 456.

Paul lastly states that "the [divorce d]ecree does not even contain a separate heading where Paul's separate property is listed and ordered confirmed as his separate property." He argues that "[w]hen there exists separate property, the [divorce d]ecree must contain language ordering the confirmation of same, such as . . . 'IT IS ORDERED AND DECREED that the following described property is confirmed as the separate property of [name of party]'" (brackets in original). Paul cites no legal authority holding as much, so the issue is waived. *See* TEX. R. APP. P. 38.1(i). In any event, the divorce decree explicitly states in paragraphs P-8.a. and R-6.a. that $90,000 is to be subtracted and recognized as Paul's separate property. We conclude that the trial court did not err in its division of Paul's separate property.

We overrule Paul's second issue.

15

### 3. Just and Right Division of Property

By his third issue, Paul argues that the trial court's division of marital property was not done in a just and right manner, as Christine was awarded "a disproportionate share of the marital property." First, Paul states that "[i]t is apparent, looking at . . . Exhibit A, that Paul did not receive a fair distribution of the community estate[,]" given that Christine was to receive $27,214.17 more that Paul per Exhibit A. Yet, Paul acknowledges that he "ask[ed] the court to grant him a divorce based on Exhibit A." We will not conclude that the trial court abused its discretion by dividing the parties' estate in a manner consistent with the parties' agreement. *See Coggin*, 738 S.W.2d at 378; *Weaks*, 471 S.W.2d at 456. Indeed, the trial court was required to follow the parties' agreement. *See Chisholm*, 209 S.W.3d at 98; *Vickrey*, 532 S.W.2d at 292; *Nuno*, 946 S.W.2d at 451.

Next, Paul argues that paragraph P-6 in the divorce decree renders the entire divorce decree ambiguous. Paragraph P-6 notes in relevant part that "[e]xcept for those portions of [Paul]'s employee and retirement benefits in Merrill Edge, Account Number xxx-17192, expressly awarded to [Christine] in [paragraph] R-7 below[,]" Paul is entitled to "all sums . . . and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, . . . or other benefits existing by reason of [Paul]'s past, present, or future employment." Paul argues that "[a] literal reading of this language yields a result that all of the other retirement accounts that comprised the parties' community estate would be awarded to Paul."

We agree that the terms in paragraph P-6 create internal ambiguities and conclude that paragraph P-6 represents a clerical error subject to modification. *See* TEX. R. APP. P.

16

43.2(b); *Int'l Bus. Machines Corp.*, 564 S.W.3d at 38; *McLendon*, 847 S.W.2d at 610. Exhibit A and other provisions within the divorce decree specifically award the parties interests in, *inter alia*, the Merrill Lynch IRA and JP Morgan account. Exhibit A, the parties' respective testimony, and the remainder of the divorce decree therefore make clear that paragraph P-6 improperly awards Paul all relevant property "[e]xcept for those portions of [Paul]'s employee and retirement benefits in Merrill Edge, Account Number xxx-17192, expressly awarded to [Christine]." Accordingly, we modify the divorce decree by striking paragraph P-6 in its entirety. *See* TEX. R. APP. P. 43.2(b); *Int'l Bus. Machines Corp.*, 564 S.W.3d at 38; *McLendon*, 847 S.W.2d at 610; *Welkener v. Welkener*, 71 S.W.3d 364, 367–68 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (modifying divorce decree to delete terms to which the parties did not agree).

Paul also argues that paragraph P-8.a. may be "confusing due to the addition of the phrase 'after $720,126.50' at the end of the paragraph."[4] The dollar amount is not explained in the divorce decree but seems to reflect a 50/50 division of the Merrill Lynch IRA account value in Exhibit A after $90,000 has been subtracted. However, the correct account balance is to be decided as of November 5, 2020, and thus the $720,126.50 number may not be an accurate accounting. Because we are unable to determine the source of the $720.126.50 amount or whether it was accounted for in conformity with the

---

[4] Paragraph P-8 provides in relevant part:

P-8.  [Paul is to receive t]he following individual retirement accounts and simplified employee pensions:

a.   50% of the balance remaining after $90,000.00 that is recognized as the separate property of PAUL D. LAUTERBACH is subtracted, in the Merrill Lynch IRA in the name of PAUL D. LAUTERBACH, Account number xxx-x9143, after $720,126.50.

17

parties' agreed-to formula, we modify the divorce decree by striking "after $720,126.50" from paragraph P-8.a. *See* Tex. R. App. P. 43.2(b); *Int'l Bus. Machines Corp.*, 564 S.W.3d at 38; *McLendon*, 847 S.W.2d at 610–14.

Finally, Paul argues that paragraph R-5 of the divorce decree, concerning Christine's share of Paul's JP Morgan Smart Retirement plan, improperly orders a division of his employee and retirement benefits "by reason of [his] past, present, *or future employment* with Tokai Carbon[.]" There is no evidence that the parties agreed to a division of Paul's future retirement benefits, and thus the language indicating as such was in error. Accordingly, we modify paragraph R-5 to strike the language concerning Paul's "future employment." *See* Tex. R. App. P. 43.2(b); *Int'l Bus. Machines Corp.*, 564 S.W.3d at 38; *McLendon*, 847 S.W.2d at 610–14.

In sum, we modify the divorce decree by: (1) striking paragraph P-6; (2) deleting the words "after $720.126.50" from paragraph P-8.a.; and (2) deleting the words "or future" from paragraph R-5. We otherwise overrule Paul's third issue.

## III. ATTORNEY'S FEES

By his fourth issue, Paul argues that the trial court erred by awarding Christine $1,962.50 in attorney's fees. We agree.

### A. Standard of Review & Applicable Law

"Texas follows the American rule on attorney's fees, which provides that, generally, 'a party may not recover attorney's fees unless authorized by statute or contract.'" *In re Nat'l Lloyds Ins.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding) (citing *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 453 n.4 (Tex. 2016)).

18

In a divorce suit, the court may award reasonable attorney's fees and expenses. *See* TEX. FAM. CODE ANN. § 6.708.

The supreme court recently held that it intended for the "lodestar analysis to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed" to determine the amount of attorney's fees to be awarded. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 497–98 (Tex. 2019). The fact finder's "starting point" for calculating an award of attorney's fees is "determining the reasonable hours worked multiplied by a reasonable hourly rate," and the party seeking recovery of attorney's fees bears the burden of providing sufficient evidence on both counts. *Id.* at 498; *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). "This base lodestar figure should approximate the reasonable value of legal services provided in prosecuting or defending the prevailing party's claim through the litigation process." *Rohrmoos*, 578 S.W.3d at 498. "[T]here is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id.* at 499. The "base lodestar figure accounts for most of the relevant *Arthur Andersen* considerations." *Id.* at 500 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (setting forth eight factors a factfinder should consider when determining the reasonableness of attorney's fees)).

At a minimum, "sufficient evidence" to support a fee award includes evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform

19

the services, and (5) the reasonable hourly rate for each person performing such services. *Id.* at 498; *El Apple I*, 370 S.W.3d at 764. Generally, "conclusory testimony devoid of any real substance will not support" an award of attorney's fees. *Rohrmoos*, 578 S.W.3d at 501.

"Appellate courts review a trial court's award of attorney's fees under an abuse of discretion standard." *Mohamed v. Ctr. for Sec. Policy*, 554 S.W.3d 767, 778–79 (Tex. App.—Dallas 2018, pet. denied). A trial court abuses its discretion if it "act[s] without reference to guiding rules and principles to such an extent that its ruling was arbitrary or unreasonable." *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021).

## B.    Analysis

Christine's counsel noted the following at the opening of the trial court's hearing on Paul's motion for new trial: "And so [Christine] has incurred almost $2,000 in attorney's fees post prove-up which I am asking the Court for as a consequence of this delay [in getting the divorce decree signed]." Later in the hearing, after ruling on Paul's motion, the trial court asked the parties if they had "any other questions?" The following exchange took place:

| [Christine's Counsel]: | Well, no, sir, but I did ask for attorney's fees. |
| --- | --- |
| Trial Court: | And what is the attorney's fees because you had to come here today and defend the motion for new trial? |
| [Christine's Counsel]: | It's just all of the delay that's occurred since the final prove-up, and that was $1,962.50. |

Hearing no other evidence, the trial court granted Christine's request for attorney's fees.

Paul argues, and we agree, that "[b]y any standard, this testimony is wholly insufficient to support an award of attorney's fees." The record is devoid of any evidence as to even the minimum requirements of what services were performed, how many hours Christine's attorney billed, and what Christine's attorney's hourly rate is. *See Rohrmoos*, 578 S.W.3d at 498; *El Apple I*, 370 S.W.3d at 764. Accordingly, the trial court erred by awarding Christine attorney's fees. *See Mohamed*, 554 S.W.3d at 778–79. We thus reverse the trial court's award of attorney's fees and remand to the trial court for a proper determination of fees. *See Sims v. Sims*, 623 S.W.3d 47, 68 (Tex. App.—El Paso 2021, pet. denied) (remanding case for proper determination of attorney's fees); *see also In re K.N.H.*, No. 13-20-00347-CV, 2022 WL 243188, at *6 (Tex. App.—Corpus Christi–Edinburg Jan. 27, 2022, no pet.) (mem. op.) ("If we reverse a trial court's determination of attorney's fees for insufficient evidence, we remand the case to the trial court for redetermination of fees.").

We sustain appellant's fourth issue.

## IV.    MOTION FOR NEW TRIAL

By his fifth issue, Paul argues that the trial court erred by denying his motion for new trial. We review a trial court's denial of a motion for new trial for an abuse of discretion. *See In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006). Paul complains that the trial court erred given its failure to (1) correct certain account numbers and (2) state a specific date on which Paul's retirement accounts were to be divided. Paul raised the first complaint on appeal in the preceding issues, and we have overruled that complaint. Accordingly, we conclude that the trial court did not err by denying Paul's motion for new

21

trial for failure to clarify specific account numbers.

Paul also argues that the trial court erred by failing to clarify the date on which the accounts are to be divided. As we concluded above, the correct date is November 5, 2020. Given that conclusion, we must modify two paragraphs that Paul points to in the divorce decree concerning his Merrill Edge plan. Paragraphs P-17 and R-8 in the divorce decree state in relevant part that each party is to receive: "50% of Petitioner's retirement benefits in Merrill Edge, Account Number xxx-17197, and any successor Plan thereof, arising out of Petitioner's past or present employment, as of the date that this Agreed Final Decree of divorce is signed by the Court." Having concluded that the retirement accounts must be divided based on their values as of November 5, 2020, we strike "as of the date that this Agreed Final Decree of Divorce is signed by the Court" in paragraphs P-17 and R-8, and replace it with "as of the trial court's November 5, 2020 rendition of judgment[.]" *See* TEX. R. APP. P. 43.2(b); *Int'l Bus. Machines Corp.*, 564 S.W.3d at 38; *McLendon*, 847 S.W.2d at 610–14.

We otherwise overrule Paul's fifth issue.

## V.    CONCLUSION

We affirm the trial court's judgment as modified in part and reverse and remand in part for a proper determination of attorney's fees.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
2nd day of June, 2022.

22