

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00121-CV

_____

IN THE INTEREST OF A.C., A MINOR CHILD

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-648427-18

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

This appeal involves Petitioner–Appellant L.P. (Grandmother) and Respondents–Appellees M.L. (Mother) and D.M. (Father), who for the last few years have all disagreed about the best conservatorship-and-possession arrangements concerning now-15-year-old A.C. (Anna).[1] After testimony started on the first day of the final trial on Grandmother's 2018 SAPCR[2] petition, the parties reached an agreement for Mother and Father to be appointed joint managing conservators; the agreement was put on the record and confirmed under oath by all three parties.

Before the trial court signed the final order incorporating the agreement nearly a year later, Grandmother attempted to revoke her consent to that agreement based in part on Family Code Section 153.004(b), which precludes a joint managing conservatorship if, among other disqualifying conditions, an unlawful sexual relationship resulted in an underage mother's becoming pregnant with the child in question. *See* Tex. Fam. Code Ann. § 153.004(b) (incorporating Tex. Penal Code Ann. § 22.011). After the trial court signed the final order, Grandmother moved for a new trial and again raised Section 153.004(b). Mother has not appealed.[3]

---

[1]We use aliases or familial descriptions to refer to the minor child and her family members. *See* Tex. Fam. Code Ann. § 109.002(d); *cf.* Tex. R. App. P. 9.8(b)(2).

[2]Suit Affecting the Parent–Child Relationship. *See* Tex. Fam. Code Ann. § 101.032(a). No one challenges Grandmother's standing under the Family Code.

[3]Mother did file a pro se appellee's brief making many of Grandmother's arguments, which Father moved to strike because Mother "did not properly file a

We conclude that because the trial court rendered judgment on the record in accordance with the parties' agreement, Grandmother's later efforts to revoke her consent came too late. We also conclude that Section 153.004(b) of the Family Code does not automatically preclude a trial court from accepting an agreed joint-managing-conservatorship arrangement. None of the other arguments that we discern from Grandmother's briefing present a ground for reversal. We will affirm the trial court's final order.

## I. Background

Mother was 16 and living with Grandmother when she became pregnant with Anna, who was born in the spring of 2007. Father's identity was unknown to Grandmother until 2015, and Grandmother—with Mother in and out of the house and the picture—raised Anna except for brief periods.

When Father entered Anna's life in early 2018, he and Grandmother at first got along,[4] but when their informal shared-possession arrangements broke down, Grandmother filed her SAPCR petition in late 2018, naming Mother and Father as respondents. Grandmother asked that she be appointed Anna's sole managing

---

notice of appeal, nor did she file a joint notice of appeal with [Grandmother]." Although we denied the motion to strike, we do not consider Mother to be an appellant. *See* Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal. Parties whose interests are aligned may file a joint notice of appeal.").

[4]The record suggests that Father even began to voluntarily send Grandmother money for Anna's support.

conservator and that Father be given standard visitation under the Family Code. Father filed a counterpetition to establish that he was Anna's father, and in December 2018, the trial court determined Father's parentage. In early 2019, the trial court entered a temporary SAPCR order and set the final trial for February 10, 2020.

On the first day of trial, Grandmother testified in narrative form, stating up front that "[Mother] was 16 when the father, who was 20 years of age, impregnated her."[5] When Grandmother called Father to testify, she began to ask about his and Mother's ages when Anna was conceived. That prompted a break in the proceedings at the trial court's behest and, ultimately, a recess until the next day. But due to the judge's intervening illness, the proceedings did not resume until three days later, on February 13, 2020.

On that day, with the parties sworn in, the trial court said that it understood they had reached an agreement. The trial court stated that it would hear the agreement and then "go down the line asking everybody if that's everybody's understanding of the agreement" and if so, it would "adopt the agreement and make it an order and then [Father's counsel] will prepare the final order." Father's counsel began by remarking that while the trial judge was out ill, "all of the parties have worked diligently, probably in excess of eight hours trying to formulate this agreement." He

---

[5]Mother's, Father's, and Anna's respective birthdates are in the record and support Grandmother's statement.

4

dictated the agreement, and each party then acknowledged his or her understanding of it. After instructing Father's counsel to prepare the final order, the trial court stated,

> All right. Send it to the -- well, here's what [Father's counsel's] gonna do, he's gonna send you a copy. Make sure you communicate with him. If you don't communicate with him, he's gonna set a motion to sign and he's gonna set it by a certain time, give y'all notice that he's filed a motion to sign if y'all don't get back to him, and then *I'm just gonna sign it because it's already been read into the record.* The Court will adopt the agreement and make it an order out of the 231st District Court. All right. Anything else?
>
> . . . .
>
> Guys, work together. Thank you very much. That will be the order of the Court. [Emphasis added.]

In response to Father's motion for entry of the final SAPCR order filed some six months later, Grandmother filed a pro se "original answer" noting that the draft order wrongly recited that it was the result of a jury trial and verdict. The trial court held a hearing on Father's motion on September 25, 2020, but no record was made and no order was signed at that time. In November 2020, Father filed a second motion for the trial court to sign its final order, but the draft order still referred erroneously to a jury trial.

Grandmother again pointed out the incorrect jury-trial reference and for the first time cited Section 153.004(b) of the Family Code: "In conformity with Texas Family Code Sec. 153[.]131(a)(b) that is subject to the prohibition in Section 153.004 (b) the Respondent [Father] cannot be appointed a Joint Managing Conservator as provide[d] by Section 153.004(b) Texas Family Code." At the end of

5

December 2020, Father filed yet another motion for a final order, and Grandmother filed a "First Amended Original Petitioner's Answer" stating that she revoked her consent to the earlier on-the-record agreement and again raised Section 153.004(b).

The trial court held a further hearing on January 4, 2021—of which no record was made—and signed the final order three weeks later.[6] The order recited that a jury had been waived and that "during the course of the [bench] trial, the parties announced to the Court that they had reached an agreement on all issues before the Court. That agreement was read into the record and was approved and adopted as the Order of the Court."[7]

Grandmother then filed a motion for new trial and a notice of appeal. Although the trial court set the motion for a hearing, it did not hold one or rule on the motion. *See* Tex. R. Civ. P. 329b(c). Grandmother has not raised an appellate issue complaining of anything concerning her new-trial motion.

## II. Grandmother's Issues

Although Grandmother's brief barely meets the minimum standards for form and substance,[8] we glean six distinct arguments, which we organize and interpret as

---

[6]The record reflects that Grandmother attended both the September 25 and January 4 hearings.

[7]The final order tracked the parties' on-the-record agreement.

[8]*See* Tex. R. App. P. 38.1(f), 38.9; *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012); *Dinkins v. Calhoun*, No. 02-17-00081-CV, 2018 WL 2248572, at *7 n.8 (Tex. App.—Fort Worth May 17, 2018, no pet.) (mem. op.); *see also Craaybeek v.*

6

follows: (1) problems existed with the substance and enforcement of the trial court's temporary orders; (2) Grandmother was wrongly deprived of a jury trial; (3) the trial court wrongly cut off Grandmother's presentation of evidence on the first day of the final trial and failed to inform her that she could seek a protective order under Family Code Section 105.0011 based on the evidence that came out that day; (4) because the trial court did not render judgment on February 13, 2020, Grandmother could and did revoke her consent to the joint-managing-conservatorship agreement; (5) Father was legally disqualified from serving as a joint managing conservator; and (6) the lack of a reporter's record for the two post-agreement hearings on Father's motion for entry of judgment violated Family Code Section 105.003.

### III. Standard of Review

We review orders involving conservatorship for an abuse of discretion. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Halleman v. Halleman*, 379 S.W.3d 443, 447 (Tex. App.—Fort Worth 2012, no pet.). A trial court abuses its discretion if it fails to analyze the law correctly or misapplies the law to established facts, *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding); *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011), or if its decision is so arbitrary and unreasonable that it amounts to a clear and

*Craaybeek*, No. 02-20-00080-CV, 2021 WL 1803652, at *3–4 (Tex. App.—Fort Worth May 6, 2021, pet. denied) (mem. op.) (observing that pro se appellants are bound by the rules of appellate procedure and explaining difference between flagrant rules violations and violations that nevertheless present grounds for review). Father urges us to find global briefing waiver, but we will instead address Grandmother's issues, as we understand them, because "appellate courts should reach the merits of an appeal whenever reasonably possible." *Weeks Marine*, 371 S.W.3d at 162.

prejudicial error of law, *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding).

## IV. Discussion

### A. The temporary orders (Issue 1)

Grandmother's complaints involving the trial court's temporary orders—entered a year before the final trial—are moot. Not only did those orders expressly state that they would last only until "the signing of the final order," but complaints about temporary orders fall by the wayside anyway when a final order has been entered. *See, e.g.*, *Mauldin v. Clements*, 428 S.W.3d 247, 261–62 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Because a final order has been entered in this case, Marca's challenges to the temporary orders are moot."); *In re T.D.M.C.*, No. 12-02-00218-CV, 2003 WL 22455758, at *2 (Tex. App.—Tyler Oct. 29, 2003, no pet.) (mem. op.) (same). We overrule what we construe as Grandmother's first issue.

### B. Complaints about the final trial (Issues 2 and 3)

In Grandmother's discernible issues two and three, she complains that the trial court violated her right to a jury trial, stopped her from presenting evidence, and erred by not informing her about protective orders under Family Code Section 105.0011.

Grandmother does not point us to any place in the record where she requested a jury trial. Moreover, Grandmother did not object to going forward with a bench trial when it began on February 10, 2020. As a result, Grandmother has waived any complaint about not receiving a jury trial. *See* Tex. R. App. P. 33.1(a) (providing that

to preserve a complaint for appellate review, party must have presented to trial court a timely request, objection, or motion stating the specific grounds for desired ruling, if not apparent from context). Even if a party has paid a jury fee, waiver occurs if the party fails to object when the trial court proceeds with a bench trial. *See In re C.H.*, No. 06-18-00104-CV, 2019 WL 942877, at *2 (Tex. App.—Texarkana Feb. 27, 2019, pet. denied) (mem. op.); *In re J.D.*, No. 2-02-189-CV, 2003 WL 302231, at *4 (Tex. App.—Fort Worth Feb. 13, 2003, no pet.) (mem. op.).

Similarly, Grandmother failed to object either when the trial court put a halt to her cross-examining Father, when it recessed the final trial for the day, or when the proceedings resumed several days later and the agreement was put on the record. She thus waived error, if any, concerning how the trial court handled the proceedings. *See* Tex. R. App. P. 33.1(a).

Finally, Section 105.0011 provides that if a trial court "believes, on the basis of any information received by the court," that any party or a party's family or household member "may be a victim of family violence, the court shall inform that party of the party's right to apply for a protective order under Title 4." Tex. Fam. Code Ann. § 105.0011. Grandmother has given us no analysis or caselaw suggesting that such a failure can constitute reversible error, and we are unaware of any.[9]

---

[9]Grandmother appears to argue that when credible evidence was presented of a Section 153.004(b) violation—based on Father's and Mother's ages when Anna was conceived in mid-2006—the trial court was obliged to inform her that she could seek

9

We overrule Grandmother's second and third discernible issues.

## C. Rendition of judgment (Issue 4)

Although Grandmother is correct that she could have revoked her agreement to the joint managing conservatorship if the trial court had not rendered judgment on February 13, 2020, we conclude that judgment was rendered on that date.

Rendition of judgment is "the judicial act by which the court settles and declares the decision of the law upon the matters at issue." *Genesis Producing Co. v. Smith Big Oil Corp.*, 454 S.W.3d 655, 659 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 58 (Tex. 1970) (orig. proceeding)). "In order to be an official judgment, the trial court's oral pronouncement must indicate an intent to render a full, final, and complete judgment at that point in time." *Gamboa v. Gamboa*, 383 S.W.3d 263, 270 (Tex. App.—San Antonio 2012, no pet.); *In re Marriage of Joyner*, 196 S.W.3d 883, 887 (Tex. App.—Texarkana 2006, pet. denied) (stating that the trial court's words, whether spoken or written, must evince a present, as opposed to future, act that effectively decides the issues before the court).

Until a trial court renders final judgment, a party can repudiate an unmediated agreement such as an agreed parenting plan. "Unlike agreements concerning the dissolution of marriage, which by statute are not revocable, the statutes concerning

---

a protective order because of "sexual abuses." We question but need not decide whether Section 105.0011 is triggered by historical but not current conduct.

10

unmediated agreements on child support, conservatorship, and possession of children lack similar language stating they are irrevocable." *In re M.A.H.*, 365 S.W.3d 814, 820 (Tex. App.—Dallas 2012, no pet.) (referencing Tex. Fam. Code Ann. §§ 153.007(a), (b) (agreed parenting plans), 154.124(a), (b) (child-support agreements)). *M.A.H.* involved a Rule 11 agreement that the mother had backed out of but that the trial court—erroneously—held her to: "[Mother] revoked her consent to the agreement before the trial court rendered its orders on the agreement. Therefore, when the court rendered its orders, there was no longer an agreement in place." *Id.* As a result, the trial court could not enter orders on conservatorship and related issues based solely on the parties' agreement. *Id.*

Father contends that the trial court orally rendered judgment on February 13, 2020, and that Grandmother therefore could not retract her agreement. Father points us to the trial court's statement at the hearing's end that "[t]he Court will adopt the agreement and make it an order out of the 231st District Court. That will be the Court's order." Reading the trial court's earlier-quoted comments in context and in their entirety, we agree with Father.

The facts here are much like those in *In re K.N.M*, No. 2-08-308-CV, 2009 WL 2196125 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem. op.). In *K.N.M.*, on the day of the final hearing, the child's parents and grandmother all testified that they had reached an agreement by which the parents would be named joint managing

conservators and the grandmother would have certain visitation rights. *Id.* at *2. After

the parties finished putting their agreement on the record, the trial court stated,

> All right. Somebody's going to prepare an order which reflects this. Is
> that correct?
>
> . . . .
>
> All right. Then based upon the testimony of all the parties
> involved, the court *will approve* the agreements as they have been stated
> for the record, and I *will make it* the *written* order of the court when it is
> submitted.

*Id.* at *3 (first and second emphases added).

As in this case, some time passed before the trial court in *K.N.M.* was given a

draft order to sign, and in the interim the mother filed a "Notice of Withdrawal of

Consent to Oral Agreement." *Id.* The grandmother then filed a motion to enter a final

order, with both the grandmother and the father asserting at the hearing that the

mother "could not withdraw her consent to the agreement because the trial court

approved the 'agreement here in the court, and that is on the record.'" *Id.* The trial

court ultimately signed a final order tracking the dictated agreement. *Id.* at *4.

On appeal, we agreed that the trial court had rendered judgment at the final

hearing:

> The case was set for a final hearing the day the parties were questioned
> about and agreed to the settlement on the record in court. No issues
> were left open for resolution, and the trial court's language at the end of
> the hearing—"upon the testimony of all the parties involved, the court
> will approve the agreements as they have been stated for the record, and
> I will make it the written order of the court when it is submitted"—
> indicates a present intent to orally render judgment on the parties'

12

> agreement and an intent to sign a "written" memorialization of the present order at a later date.

*Id.* at \*6; *see also In re J.P.*, No. 13-18-00648-CV, 2020 WL 103858, at \*4 (Tex. App.—Corpus Christi–Edinburg Jan. 9, 2020, pet. denied) (mem. op.) (holding that trial court rendered judgment despite future-tense statement, "The Court will approve the agreement of the parties and I will order the release of [Mother]"); *Arriaga v. Cavazos*, 880 S.W.2d 830, 832–33 (Tex. App.—San Antonio 1994, no writ) (per curiam) (holding that statement that "the *court will order* $4,259 payable no later than ten days" sufficed to show present intent to orally render judgment). *But cf. Caudillo v. Caudillo*, No. 07-19-00198-CV, 2020 WL 1980524, at \*3 (Tex. App.—Amarillo Apr. 24, 2020, no pet.) (mem. op.) (holding that trial court did not render judgment via email that laid out terms but concluded, "If anyone feels I left something out, let me know"); *In re S.L.*, No. 05-11-00560-CV, 2012 WL 5355708, at \*3–4 (Tex. App.—Dallas Oct. 30, 2012, no pet.) (mem. op.) (holding no rendition of judgment where not only were trial court's statements in future tense (e.g., "I will approve the agreement") but husband's counsel also stated that agreement would not become final order until letter or memorandum of understanding from a third party was received); *Cook v. Cook*, 243 S.W.3d 800, 801–02 (Tex. App.—Fort Worth 2007, no pet.) (holding no present intent to render judgment when trial court stated that "[u]pon submission of the final decree and signed by the Court, the divorce will be granted at the time, not today").

In addition, the final order itself recited that "during the course of the trial," the parties' "agreement was read into the record and was approved and adopted as the Order of the Court." Although not determinative, this language is some corroboration of the trial court's own view of what had happened on February 13, 2020.

We overrule Grandmother's fourth discernible issue.

**D. Section 153.004(b) of the Family Code (Issue 5)**

The Family Code provides that a trial court

> may not appoint joint managing conservators if credible evidence is presented of a history or pattern of . . . physical or sexual abuse by one parent directed against the other parent, a spouse, or a child, including a sexual assault in violation of Section 22.011[10] or 22.021, Penal Code, that results in the other parent becoming pregnant with the child. A history of sexual abuse includes a sexual assault that results in the other parent becoming pregnant with the child, regardless of the prior relationship of the parents.

Tex. Fam. Code Ann. § 153.004(b).

A SAPCR case from one of our sister courts involved a mother's and father's agreement to a final order appointing them joint managing conservators. *In re M.B.D.*, 344 S.W.3d 1, 2 (Tex. App.—Texarkana 2011, no pet.). The mother later moved for a new trial on grounds of undue influence and duress, obtained a hearing, and

[10]Section 22.011 of the Penal Code criminalizes sexual intercourse with a "child," defined as a person under the age of 17, even if the actor does not know the child's age. *See* Tex. Penal Code Ann. § 22.011(a)(2), (c)(1). The Penal Code also "imposes strict liability on the actor when he is more than three years older than the victim." *In re J.L.W.*, No. 05-17-00485-CV, 2018 WL 2749626, at *2 (Tex. App.— Dallas May 31, 2018, no pet.) (mem. op.) (citing Tex. Penal Code Ann. § 22.001(e)(2), and *Brown v. State*, 990 S.W.2d 759, 760 (Tex. App.—Austin 1999, no pet.)).

specifically cited Section 153.004(b) in a post-hearing brief. *Id.* at 4. At the hearing, the mother's attorney stated that the mother had begun having sex with the father when she was 14 and he was nearly 21. *Id.* The trial court "declined to hear testimony or evidence" at that hearing, although the mother's unsworn written statement was admitted as an offer of proof. *Id.* at 5.

The appellate court remanded for an evidentiary hearing, noting that Section 153.004(b) "preclud[es] . . . a sexual abuser, in certain delineated circumstances, from being named joint managing conservator of a child." *Id.* at 4–5 (observing that the record raised the "question of whether the trial court was presented with credible evidence of one of the situations which would preclude appointment of joint managing conservators"); *see also Garner v. Garner*, 200 S.W.3d 303, 310 (Tex. App.—Dallas 2006, no pet.) (in appeal from bench trial, noting that although conservatorship decisions are left to trial court's "sound discretion," that discretion "is subject to the provisions of section 153.004 of the family code"), *disapproved on other grounds by Iliff*, 339 S.W.3d at 83 & n.8; *In re Marriage of Stein*, 153 S.W.3d 485, 488–89 (Tex. App.—Amarillo 2004, no pet.) (reversing joint managing conservatorship imposed following bench trial where "credible evidence was presented" of history of physical abuse and noting that trial court's "wide latitude" and discretion is "subject to" Section 153.004,

which "prohibits the appointment of joint managing conservators" in such a situation).[11]

We interpret Grandmother's argument to be that parties can never agree around Section 153.004(b). Texas policy is to promote "the peaceable resolution of disputes," especially those involving the parent–child relationship, and "because children suffer needlessly from traditional litigation, the amicable resolution of child-related disputes should be promoted forcefully." *In re Lee*, 411 S.W.3d 445, 449–50 (Tex. 2013) (orig. proceeding) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 154.002). The Family Code encourages parties to settle among themselves issues of conservatorship and possession by entering into agreed parenting plans. *See* Tex. Fam. Code Ann. § 153.007(a) ("To promote the amicable settlement of disputes between the parties to a suit, the parties may enter into a written agreed parenting plan containing provisions for conservatorship and possession of the child."); *McLendon v. McLendon*, 847 S.W.2d 601, 608 (Tex. App.—Dallas 1992, writ denied) (holding that court reporter's transcription of agreement and sworn testimony of parties satisfied statutory requirement of "written" plan).

Section 153.007 places no qualifiers on what the parties can agree to (subject only, of course, to the child's best interest, *see* Tex. Fam. Code Ann. § 153.002). In

---

[11]*Garner* and *Stein* focused on the trial court's discretion in appointing conservators and the statutory limitation on that discretion. Neither case involved parties' agreements or the point at which judgment was rendered. *M.B.D.* similarly did not discuss any rendition-of-judgment issue.

contrast, Section 153.005 imposes a limitation by allowing the trial court to appoint a sole managing conservator or joint managing conservators "except as provided by Section 153.004." *See id.* § 153.005; *see also id.* § 153.131(a) (establishing presumption that parent should be appointed managing conservator "[s]ubject to the prohibition in Section 153.004"). The legislature knows how to qualify statutes, and it could have included similar exclusionary language in promoting amicable settlements through Section 153.007. But it did not. *Cf. McLendon*, 847 S.W.2d at 608 ("It is well established that a court may render judgment based upon an agreement of the parties that goes beyond the court's power to adjudicate in the absence of an agreement.").

We have not found any authority suggesting that Section 153.004(b), if applicable in a particular case, automatically voids a Section 153.007 agreement for joint managing conservatorship, as Grandmother suggests. *Cf.* Tex. Fam. Code Ann. § 153.0071(e-1) (giving trial court discretion—but not imposing obligation—to decline to enter judgment on mediated settlement agreement if MSA party was victim of family violence, if that circumstance impaired the party's decision-making ability, and if the agreement is not in the child's best interest). We are reluctant to read such a prohibition, explicit in some Family Code sections, into Section 153.007, particularly where Mother and Father—Anna's parents—agreed to the conservatorship and possession arrangements and where Mother herself neither moved for a new trial nor appealed. We conclude that, in these unique circumstances, Father can be a joint

managing conservator under the parties' agreed parenting plan, and we overrule what we interpret as Grandmother's Section 153.004(b) argument, her discernible fifth issue.

### E. Hearings without reporter's records (Issue 6)

In response to Grandmother's inquiries about reporter's records of both the September 25, 2020 and January 4, 2021 hearings on Father's motion for entry of a final order, the court reporter indicated that those hearings had not been transcribed. Citing Section 105.003 of the Family Code, Grandmother argues that "[u]nless waived by the parties with consent of court[,] a record has to be made" and that "the trial court committed an error by Texas Rules of Appellate Procedure 13.1 placing an obligation on the part of the court reporter to attend and make a full record of all court proceedings." *See id.* § 105.003; Tex. R. App. P. 13.1.

The Family Code provides that in a SAPCR case, a "record shall be made as in civil cases generally unless waived by the parties with the consent of the court." Tex. Fam. Code Ann. § 105.003(c). "A party, however, may waive the making of a record by . . . failing to object to the lack of a record during the hearing." *In re D.J.M.*, 114 S.W.3d 637, 639 (Tex. App.—Fort Worth 2003, pet. denied). Grandmother attended both hearings but did not make a record showing that she brought to the trial court's attention any complaint about the lack of a reporter's record or the court reporter's failure to be present (if that is what happened). *See* Tex. R. App. P. 33.1(a), 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."). We do not know whether the trial court even heard any evidence

18

at those hearings. *Cf. Baker v. Curphy*, No. 09-15-00528-CV, 2016 WL 5224753, at *1 (Tex. App.—Beaumont Sept. 22, 2016, no pet.) (mem. op.) ("The record before us demonstrates that Baker did not object to the Court's failure to make a record of the proffers of proof, nor did Baker attempt to make a bill of exception to create a record showing the objections that he lodged to the exhibits during the proceedings that were not reported. Further, Baker has not shown that any oral testimony was not recorded." (citation omitted)); *Sareen v. Sareen*, 350 S.W.3d 314, 316 (Tex. App.—San Antonio 2011, no pet.) (holding that complaining party must object to court reporter's failure to record testimony). We thus conclude that Grandmother waived the making of a record by not objecting during the September 25 or January 4 hearings, and we overrule her discernible sixth issue.

## V. Conclusion

Having overruled all issues that we could glean from Grandmother's appellate brief, we affirm the trial court's final order.

/s/ Elizabeth Kerr

Elizabeth Kerr
Justice

Delivered: June 2, 2022

19